**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 08-4199

———————

STEVEN MCGEE,
                                        Appellant

v.

WARDEN JERRY MARTINEZ

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court  No. 3-08-cv-01663
District Judge: The Honorable Richard P. Conaboy

———————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 21, 2010

Before: SMITH, FISHER, and COWEN, *Circuit Judges*

(Filed:  December 2, 2010)

Dennis E. Boyle, Esq.
Boyle, Neblett & Wenger
4660 Trindle Road, Suite 200

Camp Hill, Pennsylvania 17101
        Counsel for Appellant

Kate L. Mershimer, Esq.
Office of the United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108
        Counsel for Appellee

———————

OPINION

———————

SMITH, *Circuit Judge*.

The sole issue before the Court in this case is whether petitioner Steven McGee, a federal inmate, may maintain this suit as a habeas action under 28 U.S.C. § 2241, or whether he must re-file it as a civil rights action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

I

Following a guilty plea to federal drug charges, McGee was sentenced in the United States District Court for the Western District of Michigan to 120 months and a $10,000 fine. He is indigent, and the judgment imposing the sentence instructed that "[p]ayment [of the fine] is to be made from prison earnings at a rate of $20.00 per month," with the remaining balance to be paid at an increased rate upon his

2

release from prison. McGee avers in his habeas petition that his prison earnings presently amount to $5.25 per month.

McGee was initially housed at McKean Federal Correctional Institution, where he stayed from July 2004 through December 2005. While at McKean, McGee was introduced to the Inmate Financial Responsibility Plan ("IFRP"), 28 C.F.R. §§ 545.10–545.11. He agreed to pay a minimum of $25 per quarter toward his fine in exchange for *not* (1) being limited to spending $25 per month in the commissary, (2) being ineligible for placement in a halfway house prior to his release, (3) receiving an increased security designation, and (4) receiving an undesirable housing designation.[1] At that time, McGee's pursuit of habeas relief from his underlying conviction and sentence was costing him some $130 per month in the commissary on copying charges and "other related costs such as typewriter ribbons, legal pads, etc."; he apparently borrowed money to pay for all of this.

In December 2005, McGee was transferred to Allenwood Low Security Correctional Institution, located in the Middle District of Pennsylvania. He began on the same $25 per quarter IFRP plan for the payment of his fine, but after several months was asked to increase the payments to $75 per quarter, apparently because the authorities learned that he had a substantial sum of money in his bank account (according to McGee, these were funds borrowed to pay the costs associated with his habeas petition). He refused to agree to the increase and was placed on "IFRP refusal status,"

---

[1] Those are not the only possible consequences for refusing the IFRP. *See* 28 C.F.R. § 545.11(d)(1)–(11).

3

which limited his commissary spending to $25 per month—not enough to meet his needs as he pursues habeas relief from the judgment against him. In August of 2008, disciplinary segregation and a loss of good time were recommended for failure to fulfill his IFRP requirements. The record is not clear as to why these additional penalties were recommended or whether they were ever imposed.

McGee filed the instant petition *pro se* under 28 U.S.C. § 2241, alleging that his rights were being violated by "unconstitutional conditions of his confinement"—to wit, the restriction of his commissary spending and the hindrance this imposed on his ability to pursue his original habeas action. The District Court *sua sponte* dismissed the action without prejudice the day after it was filed, concluding that because it challenged the conditions of McGee's confinement it should have been filed as a civil rights action. McGee timely appealed.[2]

II

The "core" habeas corpus action is a prisoner challenging the authority of the entity detaining him to do so, usually on the ground that his predicate sentence or conviction is improper or invalid. *See Leamer v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002). Title 28, section 2241 of the

---

[2] This Court appointed counsel to represent McGee, and we acknowledge and appreciate his exemplary service. The District Court had subject matter jurisdiction under 28 U.S.C. § 2241(a). We have jurisdiction to review its dismissal under 28 U.S.C. §§ 1291 and 2253(a). Our review is plenary. *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 239 n.3 (3d Cir. 2005).

4

United States Code "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001). *See also Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241 (3d Cir. 2005). For instance, the habeas petitioner in *Woodall* challenged a Bureau of Prisons regulation that capped his end-of-sentence time in a halfway house at ten percent of his total sentence (there, eleven weeks); the judgment had specified that the petitioner would spend six months in such a facility. We observed that "[c]arrying out a sentence through detention in a [halfway house] is very different from carrying out a sentence in an ordinary penal institution," and therefore concluded that "Woodall's petition crosses the line beyond a challenge to, for example, a garden variety prison transfer." 432 F.3d at 243. That qualitative difference was sufficient to mark Woodall's challenge as one that went to the "execution" of his sentence, and that was thus cognizable under § 2241. *Id.*

In contrast, "when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, [a civil rights] action under § 1983 is appropriate." *Leamer*, 288 F.3d at 542. That is, the fact that a civil rights claim is filed by a prisoner rather than by an unincarcerated individual does not turn a § 1983 case or a *Bivens* action into a habeas petition. This is true even where the complained-of condition of confinement creates, as a secondary effect, the possibility that the plaintiff will serve a longer prison term than that to which he would otherwise have been subject. The petitioner in *Leamer* was a state prisoner whose behavioral problems had led to his placement on "Restricted Activities Program"

5

status, which barred him from attending therapy sessions that were a condition precedent to his parole eligibility. We concluded that, even though a ruling in the petitioner's favor would have assisted him in obtaining parole eligibility and thus a shorter prison stint, the action was "aimed at a condition of his confinement." *Id.* at 543. Where the petition is couched as a challenge to the duration of a prisoner's sentence, we held, "[t]he operative test . . . is not whether Leamer would, if successful, be able to appear before the Parole Board. It is whether a favorable determination of Leamer's challenge would *necessarily imply* that he would serve a shorter sentence . . . ." *Id.* Taking *Woodall* and *Leamer* together, the question to be asked is whether granting the petition would "necessarily imply" a change to the fact, duration, or execution of the petitioner's sentence.

The IFRP is meant to "encourage[] each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R. § 545.10. Those financial obligations generally consist of a fine, an order for restitution, and/or a special assessment imposed as part of a criminal judgment. Under the IFRP, prison staff "shall help th[e] inmate develop a financial plan and shall monitor the inmate's progress in meeting" his obligations. 28 C.F.R. § 545.11. Thus, the goal of the IFRP is to achieve compliance with a provision of each convict's criminal judgment—namely, the timely payment of whatever sum the court has ordered him to pay. Through the IFRP, then, the Bureau of Prisons is "putting into effect" and "carrying out" the fine portion of McGee's sentence. The IFRP is therefore part of the Bureau's means of "executing" the sentence, and McGee's lawsuit challenging the legality of the IFRP and his placement in "refusal" status sounds in habeas.

While McGee's briefing invokes the phrase "unconstitutional conditions of confinement," the complained-of conditions have been imposed as a means of enforcing a financial obligation that is part of his sentence. He has not challenged, say, the denial of kosher meals—though we suppose that if he had been denied kosher meals because he refused to pay his fine in accordance with the IFRP, he might have a habeas cause of action. In other words, McGee's petition should not be conceptualized as a direct challenge to the various "conditions of confinement" that have been inflicted upon him. The core of the petition is the claim that the "imposition of [IFRP] restrictions . . . is a sanction that violates the terms of petitioner McGee's criminal Judgment," and a demand that "the Bureau of Prisons vacate its decision to place McGee in [IFRP] refusal status." The petition is, at bottom, a challenge to the IFRP and its requirement that McGee pay $75 per quarter when his sentence (i) requires only $20 per month (i.e. $60 per quarter), and (ii) specifically directs that such payments be made out of his prison earnings (which allegedly come to substantially less than $75 per quarter). The Warden acknowledges that "[i]f McGee was challenging who could set the payment plan for his criminal fine—the sentencing court or the [Bureau of Prisons] under the IFRP—the Government would concede that habeas corpus is the proper way for him to proceed." This is in fact what McGee has done: he argues that the payment terms imposed by the Bureau (in the IFRP) are illegal in that they conflict with the terms imposed by the sentencing court (in the judgment). If the IFRP's payment requirement is illegal, then so are McGee's placement in refusal status and the restrictions that come with it. The imposition of those restrictions is a means of enforcing the payment schedule, and they will disappear if

7

McGee wins and is placed on (and complies with) a new schedule.

Our sister courts of appeals have reached the same conclusion that we reach today. In *United States v. Diggs*, 578 F.3d 318 (5th Cir. 2009), a prisoner enrolled in the IFRP, but later wished to reduce his payments. He filed a motion with the sentencing court under 18 U.S.C. § 3664(k), which allows a defendant to file a motion to amend the payment schedule for restitution as made in the judgment. The sentencing court denied relief on the merits. The Fifth Circuit vacated that decision, holding that the challenge to the IFRP should have been brought under § 2241. (We note that the Fifth Circuit adopted *the government's* argument that § 2241 is the proper vehicle to challenge an IFRP payment schedule.) And the Eighth Circuit has ruled that, where the "claims of the petitioners challenge the IFRP's payment schedule for their respective financial obligations," those claims "concern the execution of sentence, and are therefore correctly framed as § 2241 claims brought in the district where the sentence is being carried out." *Matheny v. Morrison*, 307 F.3d 709, 711–12 (8th Cir. 2002). We agree with these decisions.

The IFRP payment schedule and the sanctions imposed for noncompliance are part of the execution of McGee's sentence. Accordingly we hold that the claim that they are illegal and invalid falls under the rubric of a § 2241 habeas petition. We will vacate the judgment of the District Court, and remand for consideration on the merits.

8