**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3870
_____

JOSE HERIBERTO CABADA,
A/K/A Heriberto Moncada,
                                    Appellant

v.

WARDEN DONNA ZICKEFOOSE
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 09-cv-06317)
District Judge: The Honorable Renée M. Bumb
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 8, 2011
Before: SLOVITER, FISHER and WEIS, Circuit Judges

(filed: June 23, 2011)
_____

OPINION
_____

PER CURIAM.

Jose Cabada, a federal inmate currently incarcerated at FCI-Fort Dix in

New Jersey, appeals from the denial of his petition for a writ of habeas corpus, under 28

U.S.C. § 2241, in which he claims that time-credit miscalculations by the Federal Bureau

1

of Prisons (BOP) have kept in him custody beyond the time authorized by his sentence. We agree with the District Court that Cabada is not entitled to credit towards his current sentence the time spent in custody pursuant to his 1994 federal sentence. We also agree with the District Court that the BOP awarded Cabada the correct amount of prior custody credit for the time leading up to his escape. Accordingly, we will affirm.

## I.

Cabada was convicted more than thirty years ago in a Texas federal court of trafficking heroin across the border. On March 28, 1977, Cabada was sentenced by that court to fifteen years of imprisonment. With credit for time spent in pre-sentence custody—from October 27, 1976, to March 27, 1977—Cabada's max-out date was set by the BOP at October 27, 1991. However, Cabada escaped from prison on October 6, 1980.

On November 17, 1993, a man using the name "Heriberto Moncada" was arrested by the DEA and eventually convicted in an Illinois federal court for attempting to sell cocaine. On June 28, 1994, Moncada was sentenced by that court to 188 months of imprisonment. Unbeknownst to the Government during those proceedings, Moncada was actually the false identity of Cabada. And because Cabada never divulged his true identity, the Illinois court had no occasion to consider Cabada's prior conviction for trafficking heroin, nor his escape from prison, during the sentencing of Moncada.

On July 13, 2007, Cabada completed his 1994 sentence as Moncada. He was released to immigration authorities, who promptly discovered the ruse and who

2

transferred Cabada on July 17, 2007, to the custody of the United States Marshals Service, which returned him to federal prison. The BOP then recalculated Cabada's 1977 sentence so that he could finish serving it; Cabada's Expiration Full Term (EFT) date was set at August 1, 2018.[1] In arriving at the recalculated sentence, the BOP figured that Cabada did not cease to be on "escape status"[2] until the date he finished serving his 1994 sentence (July 13, 2007), as opposed to the date Cabada was arrested as Moncada (November 17, 1993).

After exhausting his administrative appeals, Cabada filed this habeas petition under § 2241, raising two related claims: "Whether the Federal Bureau of Prisons has unlawfully miscalculated the application of credit toward this case for prior jail time spent in federal custody served [from October 27, 1976] through October 7, 1980?"; and "Whether under Program Statement 5880.28 I should be released of federal custody immediately as the instant . . . sentence of 15 years of imprisonment [has] been served out?" (DC dkt #1, pgs. 4-5.) The District Court denied those claims on the merits, and

---

1 As explained in the relevant BOP Program Statement (PS), "[t]he EFT date, also known as the 'full term date' of the sentence, is the maximum date of the sentence. This date is determined by adding the total length of the sentence to the beginning date of sentence, minus presentence time credit, (Chapter VI.), plus inoperative time (Chapter V.)." Bureau of Prisons, Sentence Computation Manual ("Old Law"-Pre CCCA-1984), PS 5880.30, Chapter VII, pg. 1, ¶ 3.a., available at http://www.bop.gov. Cabada relies heavily on the Program Statements in support of his arguments on appeal, and we cite to them freely throughout this opinion.

2 "If a person departs federal custody after arrest without the permission of the Attorney General or order of the court, then such person will be placed in escape status and the sentence then serving shall become inoperative." PS 5880.30, Chapter V, pgs. 1-2, ¶ 2.a.

Cabada appealed.

## II.

The District Court had subject matter under 28 U.S.C. § 2241(a), and our jurisdiction arises under 28 U.S.C. §§ 1291 and 2253(a). A certificate of appealability is not required for Cabada's appeal. See Burkey v. Marberry, 556 F.3d 142, 146 (3d Cir. 2009). We exercise plenary review of the District Court's denial of habeas corpus relief. McGee v. Martinez, 627 F.3d 933, 935 n.2 (3d Cir. 2010). The District Court's factual findings are reviewed for clear error. Vega v. United States, 493 F.3d 310, 314 (3d Cir. 2007). We may affirm on any basis supported by the record. Fairview Twp. v. EPA, 773 F.2d 517, 525 n.15 (3d Cir. 1985).

## III.

The authority to calculate a federal prisoner's period of incarceration for the sentence imposed is delegated to the Attorney General, who acts through the BOP. United States v. Wilson, 503 U.S. 329, 334-35 (1992). We have the authority to correct a computational error by the BOP through a writ of habeas corpus. See Barden v. Keohane, 921 F.2d 476, 479 (3d Cir. 1990). The central issue in this case is, at bottom, whether the BOP has correctly recalculated the date on which Cabada will finish serving his 1977 sentence. We conclude that it has.

### Cabada's credit for time served as Moncada

The District Court determined that Cabada remained on escape status until July 13, 2007, notwithstanding the fact that, physically speaking, he returned to BOP

4

custody on November 17, 1993. This determination is at first glance significant because if Cabada were given approximately fourteen years of custody credit—the time spent incarcerated as Moncada— toward the unserved portion of his 1977 sentence, we would have to order his immediate release from BOP custody.

We need not explore any further the question of when Cabada ceased to be on escape status; regardless of whether that date was November 17, 1993, or July 13, 2007, Cabada could not begin serving the remainder of his 1977 sentence until the latter date because the sentences were not ordered to run concurrently with one another. See 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.").[3] Moreover, because Cabada was sentenced in 1977, the "old law" sentencing-credit regime[4] requires only that credit be awarded for "any days spent in custody *in connection with the offense or acts for which sentence was imposed*." Reno v. Koray, 515 U.S. 50, 59 (1995) (emphasis added, citation omitted). As a result of his deception, Cabada's time spent in BOP custody as Moncada was wholly unrelated to the 1977 sentence.

---

[3] Like the District Court, we recognize that "the 1994 sentencing court did not order the sentences to run concurrently []for obvious reasons: the court was unaware of the prior sentence." (DC Op. at 5-6.)

[4] Section 3568 of Title 18 governed 'credit for time served' determinations regarding sentences imposed from 1966 until November 1, 1987, when the Sentencing Reform Act of 1984 (SRA), 18 U.S.C. § 3551 et seq., went into effect. See Wilson, 503 U.S. at 331-32. Such sentences are referred to as "old law" sentences. Those sentences imposed following the effective date of the SRA are referred to as "new law" sentences, and are governed by 18 U.S.C. § 3585.

Cabada's arguments in support of his claim are unavailing. In particular, we reject Cabada's reliance on PS 5880.28(CN-03), pg. 1-14C, ¶ 2, because PS 5880.28 applies only with regard to sentencing calculations for "new law" sentences, and because, in any event, it does not appear that Cabada's escape from federal custody resulted in a separate conviction for that offense. See id. We likewise reject Cabada's reliance on PS 5880.28 (CN-03), pg. 1-29, ¶ 1, again because PS 5880.28 applies only to "new law" sentences and further because that specific section is applicable only in the event that "the new sentence and the escape sentence are aggregated." For all these reasons, we conclude that the District Court did not err in denying habeas relief for Cabada on this claim.[5]

### Cabada's credit for time served prior to his escape

As noted above, Cabada entered federal custody on October 27, 1976, and escaped on October 6, 1980. The District Court concluded that "the BOP properly awarded [Cabada] prior custody credit for the period from October [27], 1976, the date of his arrest, until March 27, 1977, the date before sentence was imposed," and further that "the BOP properly awarded [Cabada] credit for the period from March 28, 1977, through

---

[5] In addition, it would be a perversion of the criminal justice system if a prisoner, who not only escapes from custody but who engages in a thirteen-plus year scheme to deceive the government into thinking he is someone else, were to receive a substantial benefit from the aforementioned misconduct. Cf. Vega, 493 F.3d at 322 ("All courts agree that if a prisoner has actively effectuated his release, for example by escaping, or actively thwarted governmental attempts to recover him, he may not receive credit for time at liberty.").

October 6, 1980, the date of his escape." (DC Op. at 7.)[6] Based on those dates, and pursuant to the directives of § 3568, the District Court found that Cabada had 4,038 days left to serve on his fifteen-year sentence at the time of the escape. Thus, the District Court stated, the BOP's "renewed sentence calculation resulted in a new Expiration Full Term Date of August 1, 2018. [Cabada's] projected release date is May 5, 2013." (DC Op. at 4-5.)[7]

We use as our guideposts the same dates used by both the BOP and the District Court, see United States v. Pungitore, 910 F.2d 1084, 1119 (3d Cir. 1990) (federal sentence for pre-November 1, 1987 offense does not start running until defendant is delivered to site where sentence will be served); PS 5880.30, Chapter V, pg. 2, ¶ 2.a.(1) ("If the prisoner was serving a sentence at the time of escape, then the sentence will become inoperative beginning the day after the escape . . ."); PS 5880.30, Chapter VI, pg. 3, ¶ 7.b.(1) ("Presentence time credit shall be given for time spent in the custody of the

_____

[6] At both the Warden/Local (initial) and Regional (intermediate) levels of administrative review, the BOP stated that Cabada entered federal custody, following his arrest for trafficking heroin, on October 27, 1976, that he was sentenced on March 28, 1977, that he escaped from prison on October 6, 1980, and that he finished serving his 1994 sentence on July 13, 2007. However, at the National (final) level, the BOP inferred that Cabada entered federal custody on October 28, 1976, and escaped on October 7, 1980. We believe these minor discrepancies are the result of typographic error, and we nevertheless utilize the relevant dates as found by the District Court and accepted by Cabada in his brief.

[7] The Government characterizes May 5, 2013, as Cabada's "mandatory release date." (Gov't Br. at 6.)

Attorney General (whether actual or constructive) as a direct result of the acts or offenses that led to the federal sentence."), and conclude that the District Court's findings concerning Cabada's EFT date are not clearly erroneous.

A fifteen-year sentence imposed on March 28, 1977, means that Cabada was to be imprisoned until March 27, 1992, for his heroin trafficking conviction. See Yokley v. Belaski, 982 F.2d 423, 425 (10th Cir. 1992) ("For purposes of sentencing . . . we conclude that when an inmate is incarcerated for a term of years it makes no difference that a year contains 365 or, in the case of a leap year, 366 days."); accord United States v. Tawab, 984 F.2d 1533, 1534 (9th Cir. 1993) (per curiam). Subtracting 152 days that Cabada spent in pre-sentence custody (October 27, 1976 through March 27, 1977), the BOP determined that Cabada's EFT would be October 27, 1991. At the time of his escape, Cabada had served 1,289 days in post-sentence custody (March 28, 1977 through October 6, 1980), leaving 4,038 total days left to serve (the time difference between and including October 7, 1980, and October 27, 1991). Counting forward 4,038 days after July 12, 2007 (the last day Cabada's 1977 sentence was inoperative), leads to

August 1, 2018, which is the date used by the BOP for Cabada's EFT.[8]

## IV.

For the reasons given in this opinion, we will affirm the judgment of the

District Court.

---

8 This result is similarly reached by using the BOP's Expiration Table, which "numbers each day from January 1, 1951 (Number 4384) through December 31, 2060 (Number 44561) in exact numerical sequence." PS 5880.30, Chapter II, pg. 1, ¶ 1; see also id. ("The most valuable and necessary aid to sentence computation is the Expiration Table (see Appendix XIII EXPIRATION TABLES)."). We note that in the equation below, dates are shown in years, months and days order, and that DCB stands for "date computation begins"; i.e., "the date that the sentence begins to run." PS 5880.30 Chapter I, pg. 1, ¶1.

| | | | | |
|---|---|---|---|---|
| DCB | = | 77-03-28 | = | 13967 |
| 15-year Sentence | = | + 15 | | |
| Tentative EFT | = | 92-03-28 | = | 19446 |
| Jail Credit | | | = | - 152 Days |
| Inoperative Time | | | = | + 9775 Days |
| Tentative EFT | = | 18-08-02 | = | 29069 |
| Back Up to Include DCB | | | = | - 1 Day |
| EFT | = | 18-08-01 | = | 29068 |