PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3176
_____

ANTHONY VELAZQUEZ

Appellant

v.

SUPERINTENDENT FAYETTE SCI; DISTRICT
ATTORNEY LANCASTER COUNTY; ATTORNEY
GENERAL PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. Action No. 5-15-cv-5177)
District Judge:  Honorable Edward G. Smith

_____

Argued June 27, 2019

Before: SMITH, *Chief Judge*, CHAGARES, and
GREENAWAY, JR., *Circuit Judges*.

(Filed: September 3, 2019)

_____

Rosemary Auge [ARGUED]
Arianna J. Freeman
Federal Community Defender Eastern District of
Pennsylvania
Federal Community Defender Office for the Eastern District
of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
        *Counsel for Plaintiff-Appellant*

Travis S. Anderson [ARGUED]
Lancaster County Office of District Attorney
50 North Duke Street
Lancaster, PA 17602
        *Counsel for Defendants-Appellees*

_____

OPINION OF THE COURT
_____

GREENAWAY, JR., *Circuit Judge*.

Actions speak louder than words, but both speak. Our criminal justice system thus presumes that a person's actions and words are altogether meaningful—that is, some degree of intentionality is inherent to them. This presumption developed at a time when we were far less cognizant of the varied ways in which mental illness may influence conduct and speech. In fact, our collective system would only recognize the role of mental illness in the exceedingly rare instance in which such

illnesses rendered a defendant incapable of intentionality. A number of states have since made efforts to reflect a more developed understanding. This 28 U.S.C. § 2254 habeas case stems from one such effort by the Commonwealth of Pennsylvania.

In exchange for a waiver of the right to a jury trial, Pennsylvania law permits a defendant to enter a special guilty plea, formally known as guilty but mentally ill ("GBMI"). If the plea is accepted, the defendant has the opportunity to receive mental health treatment while serving her sentence. The rationale is that providing treatment where needed will reduce the likelihood that a defendant recidivates, which is in her long-term interest and protects the public from the attendant harms and costs of a repeat offender. *See Commonwealth v. Davis*, 612 A.2d 426, 429–30 (Pa. 1992).

The waiver and entry of the plea are not enough to secure this opportunity, however. This is because a trial judge is not permitted to accept a GBMI plea unless she examines certain reports, holds a hearing on the sole issue of the defendant's mental illness, and determines that the defendant was mentally ill at the time of the offense. If the result of this process is that the trial judge does not accept the GBMI plea, the defendant's right to trial is returned, and she may choose to exercise it.

Appellant Anthony Velazquez was charged with numerous offenses arising out of two sets of incidents: one involving his paramour, and the other involving a corrections officer. He had a history of mental illness, so he tried to enter a GBMI plea. The GBMI plea was not accepted. The trial judge did not examine the requisite reports, did not hold the aforementioned hearing, and did not determine whether

3

Velazquez was mentally ill at the time of the offense. But Velazquez's right to trial was never returned to him. The trial judge simply recorded that Velazquez had entered a normal guilty plea. Trial counsel did not object to any of this.

Velazquez's § 2254 habeas petition claims that counsel's failure to object constituted ineffective assistance of counsel in violation of the Sixth Amendment and resulted in his being deprived of the opportunity to plead GBMI. The claim inheres two questions of first impression for this Court: first, whether we can exercise habeas jurisdiction where a petitioner merely asserts that the wrong guilty plea was entered and, second, whether the requisite prejudice can be shown where the appropriate plea would not have resulted in a reduced sentence.

The District Court misconstrued the first question and thus determined that it lacked habeas jurisdiction, and it never passed on the second. We answer both in the affirmative. We also agree with Velazquez that the assistance rendered by his trial counsel was constitutionally defective. We will therefore vacate the District Court's order and remand with instructions to grant the writ.

## I. Background

### A. Factual

Velazquez was charged on three separate Criminal Informations in 2008. The allegations against him arose from two sets of incidents: one involving his paramour, and the other involving a corrections officer. With his paramour, he entered a residence and got into a physical altercation with her and another occupant, threatened her at his preliminary hearing

4

so that she would not testify against him, and, from prison, sent numerous threatening letters to her to the same effect. With the corrections officer, he refused to go into a holding cell while he was detained. The corrections officer "sustained scratches on his right arm while restraining [Velazquez] and attempting to place [him] back inside the cell." JA 208.

Velazquez was charged with burglary, intimidating a witness, terroristic threats, and harassment for the incidents involving his paramour. He was charged with aggravated assault for the incident with the constable. Due to Velazquez's history of mental illness, his trial counsel advised him to enter a GBMI plea on all charges. However, counsel was apparently unaware of the prerequisites for such a plea to be accepted and for Velazquez to have the opportunity to secure the treatment that is the core benefit of the plea.

Specifically, Pennsylvania allows "[a] person who waives his right to trial [to] plead [GBMI]." 18 Pa. Cons. Stat. § 314(b) ("section 314(b)"). But the law is express that,

> *No* plea of [GBMI] may be accepted by the trial judge *until* [s]he has examined all reports prepared pursuant to the Rules of Criminal Procedure, has held a hearing on the *sole issue* of the defendant's mental illness at which either party may present evidence and is satisfied that the defendant was mentally ill at the time of the offense to which the plea is entered.

*Id.* (emphases added). In the event that a GBMI plea is not accepted by the trial judge, section 314(b) provides that the defendant is "permitted to withdraw h[er] plea" and is "entitled to a jury trial . . . ." *Id.* If the GBMI plea is accepted, the

5

defendant may still have "any sentence imposed on h[er] which may lawfully be imposed on any defendant convicted of the same offense." 42 Pa. Cons. Stat. § 9727(a) ("section 9727(a)"). However, she has the opportunity for a hearing and a finding "on the issue of whether [she] . . . is *severely* mentally disabled and in need of treatment" at the time of sentencing. *Id.* (emphasis added). The consequence of a severely-mentally-disabled-at-sentencing finding is that the defendant would be provided the requisite treatment pursuant to section 9727(b).

Thus, all the entry of a GBMI plea provides a defendant is process: a hearing on mental illness at the time of the offense to determine whether the plea will be accepted and, if the plea is accepted, a hearing on whether the defendant is severely mentally disabled at the time of sentencing such that treatment will be provided.

With this as the background, Velazquez agreed to enter a GBMI plea and thus relinquished his right to trial, as outlined in section 314(b). Entry of the plea did not proceed as section 314(b) requires, however. During the plea colloquy, the judge announced that he would go through the "guilty plea portion" that day, and then resolve the mentally ill aspect "most likely prior to the date set for sentencing . . . ." JA 216–17. He understood that "this is actually anticipated to be a [GBMI] plea," JA 216, and therefore directed counsel to schedule the requisite hearings: "[A]s I indicated earlier, [defense counsel] will be getting the medical records together for a further hearing with regard to [the GBMI] aspect of this plea," JA 226.

Trial counsel agreed with the judge's proposed process, stating:

6

Correct, Judge. It was my understanding that we would be having him plead guilty to the facts and then we would be reserving at the time of sentencing a *possible* hearing to address the [GBMI] and have the Court make that determination at that time.

JA 217 (emphasis added).

The trial judge proceeded to confirm with Velazquez that what he sought to enter was a GBMI plea. The judge then reiterated that, after taking the plea, he would hold a "further hearing with regard to [the GBMI] aspect of [Velazquez's] plea . . ." JA 226. The Commonwealth's only addition was that it would request a specific hearing "just on the matter of whether [Velazquez] will be sent to a mental health hospital or . . . a state correctional facility that contains a mental health hospital." JA 227.

Velazquez's trial counsel did not secure the requisite medical records or examinations for a GBMI plea, and no mental health hearing was held. He also did not object when the trial judge ultimately sentenced Velazquez without holding the hearing to which the judge initially alluded. Nor did he take issue when the trial judge recorded the plea as "Guilty Plea," rather than "Guilty Plea/Mentally Ill" after both the plea hearing and sentencing. JA 230, 241.

### B. Procedural

This is the first time that a court will consider these errors by trial counsel, and it comes nearly a decade since Velazquez was sentenced. Some explanation is warranted.

The procedural framework explains the timing. Notably, a criminal defendant who is convicted in state court and who challenges his conviction or sentence under 28 U.S.C. § 2254 is required to first do so on direct appeal—that is, up through the state court system until no further appeal can be had. If unsuccessful on direct appeal, the defendant then has to exhaust the state's collateral appeal process, where one is available and effective. *See* § 2254(b)(1)(A) & (B)(ii). Pennsylvania has such a process, pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §§ 9541–46. This process begins with a defendant's filing a petition to a PCRA court and proceeds in the same manner as a direct appeal, ending when no further appeal can be had. Then, and only then, may a defendant file a 28 U.S.C. § 2254 petition like the one here. *See* 28 U.S.C. § 2254(b)(1). Needless to say, this process takes time. The hope is that the state courts will identify and correct any errors before a federal court is called upon.

This hope did not manifest here. The state courts did not pass on the claim before us. Unfortunately, the likely explanation is oversight. Indeed, despite the clear language of section 314(b) and section 9727(a), every prior court and lawyer involved in this matter believed that Velazquez's GBMI plea was accepted by the trial judge and did not find error in trial counsel's performance.

Neither trial counsel nor the trial judge were aware that there was an error with the plea. Trial counsel's lack of knowledge is further highlighted by the fact that he made no reference to section 314(b) on direct appeal. Instead, he falsely stated that Velazquez's GBMI plea had been accepted, which the trial court and the Pennsylvania Superior Court repeated.

8

In the brief supporting his pro se petition for PCRA relief, Velazquez also stated that he "entered a plea of [GBMI]." JA 311 ¶ 66 (emphasis added). But, as he articulated it, his claim for relief was premised on what happened after—that is, the procedural defects in the plea process and trial counsel's constitutionally defective performance. He first explained that "no hearing was held on the mental health aspect of [his] case and the Court never made a finding that [he] was mentally ill at the time of the offense." JA 312 ¶ 71. In support, he quoted verbatim what section 314(b) required, as well as what section 9727(a) required. *Id.* ¶¶ 68–69. And, immediately thereafter, he stated that "[t]rial counsel did not object to the [this] defective procedure[, as he] did not request the Court to hold the hearings and make the findings required by 18 Pa.C.S.A. § 314 *and* 42 Pa.C.S.A. § 9727(a)." *Id.* ¶ 72 (emphasis added). Velazquez concluded by asserting that counsel "had no reasonable strategic basis for failing to object," and that he "was prejudiced since there was no on the record finding of mental illness and . . . no finding that he is severely mentally disabled . . . ." *Id.* ¶ 73–74 (articulating further that the absence of these findings resulted in his "not receiving the programming and treatment which he would otherwise receive while incarcerated in the state prison system").

His claim was nonetheless overlooked. In a two-page no-merit letter,[1] Velazquez's PCRA counsel characterized

---

[1] Though not required, Pennsylvania affords counsel to PCRA petitioners. A no-merit letter is a mechanism by which appointed PCRA counsel may seek to withdraw from representing a petitioner, on the basis that the petition is meritless. The letter is sent to the petitioner and must detail the

9

Velazquez's GBMI claim as only that "[Velazquez] should have been afforded a 'Mental Health Hearing,' *before* being sentenced." JA 332 (emphasis added). He then reasoned that such a hearing was unnecessary because the Commonwealth withdrew its challenge to Velazquez's GBMI status. And he too ultimately averred that the "plea entered [w]as [GBMI]," and thus concluded that the failure to evaluate Velazquez prior to his sentencing did not prejudice him. *Id.*

Velazquez challenged the letter, again stating the points in his pro se brief. He added that he knew his pro se submissions might have been "inarticulately drafted from the start," and so "expected, desired, and wished PCRA counsel [would] raise in an Amended PCRA petition [what had] to be gleaned from" his brief in support. JA 350.

But this was to no avail: the PCRA court adopted PCRA counsel's framing and reasoning and ultimately dismissed Velazquez's petition. The Superior Court affirmed,

---

nature and extent of the lawyer's review of the case, list each issue the petitioner wishes to have reviewed, and contain an explanation of why the lawyer believes that the petitioner's issues are meritless. *Commonwealth v. Finley*, 550 A.2d 213, 215 (Pa. 1988). The PCRA court must then "conduct[] its *own independent review of the record*" and determine whether it agrees that the petition is meritless. *Id.* (emphasis added). If so, counsel is permitted to withdraw, and the petitioner is allowed to proceed pro se or with the aid of private counsel. *Id.* The federal analog is a motion pursuant to *Anders v. California*, 386 U.S. 738 (1967).

adopting the PCRA court's opinion and reasoning. The District Court rejected the claim on the basis that it was not cognizable in federal habeas. It also added that, because "the Commonwealth ultimately did not challenge [Velazquez's] assertion that he was [GBMI], . . . the trial court accepted [his GBMI] plea without conducting a hearing." JA 22.

Velazquez appealed pro se, and counsel was later appointed.

## II. Discussion

In order to appeal the District Court's decision as a 28 U.S.C. § 2254 habeas petitioner, Velazquez had to first seek a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1)(A). The certificate could only be issued by a circuit justice or judge, where Velazquez made a substantial showing of a denial of a constitutional right. § 2253(c)(1) & (2). The certificate would then indicate the specific issue(s) that satisfied the required showing. *See* § 2253(c)(3).

Two Panels of judges on this Court construed Velazquez's appeal as one such request, and ultimately granted the certificate for two issues: first, whether trial counsel was ineffective for advising Velazquez to enter a guilty plea on the aggravated assault charge ("aggravated assault claim") and, second, whether trial counsel was ineffective for failing to object to the defective plea procedure which resulted in Velazquez's being deprived of the opportunity to enter a GBMI plea ("GBMI claim").[2]

---

[2] In a case about the deficient performance of one lawyer, we pause to commend another. The initial Motions

11

We will grant the petition with respect to the GBMI claim, which obviates the need to reach the aggravated assault claim.[3] As the Commonwealth conceded at oral argument, the remedy for the GBMI claim is to vacate the current judgment of conviction as to all charges, including the aggravated assault charge. *See* Oral Arg. Audio 21:24–22:02.

Our analysis will thus consist of a determination as to: (A) whether we may exercise habeas jurisdiction over Velazquez's GBMI claim, (B) the appropriate standard of review, which will include a determination as to whether the GBMI claim was properly exhausted in state court, and (C) (1) whether trial counsel was ineffective for failing to object to the defective plea procedure, and (2) whether this prejudiced Velazquez.

## A. Jurisdiction

The sole inquiry for habeas jurisdiction is whether "granting the petition [as to the claim] would 'necessarily

---

Panel did not grant a COA as to Velazquez's GBMI claim. Once appointed, however, counsel skillfully and diligently reviewed the record and moved to expand the COA to include this claim. In so moving, counsel pointed out that, contrary to the averments by every court and lawyer before, the record reflected that Velazquez's GBMI plea was not accepted. The motion was granted.

[3] The crux of the aggravated assault claim is that Velazquez was advised to enter a GBMI plea to all charges, without being informed that the Commonwealth's case for aggravated assault might have been materially deficient.

imply' a change to the fact, duration, or execution of the petitioner's sentence." *McGee v. Martinez*, 627 F.3d 933, 936 (3d Cir. 2010) (citations omitted). The District Court took Velazquez's characterization of the relief he sought at face value and determined that a claim seeking mental health treatment during incarceration does not imply a change to the fact or duration of confinement. We view the appropriate relief differently and conclude otherwise.

1.

At the outset, contrary to the District Court's ruling, even if one concludes that a claim is not cognizable in habeas, the claim is not necessarily dismissed.

Section 2254(a) confers jurisdiction to "[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court" over habeas petitions from state prisoners. 28 U.S.C. § 2254(a). The grant is limited to challenges to state-court judgments on "the ground that [the petitioner] is *in custody* in violation of the Constitution or laws or treaties of the United States." *Id.* (emphasis added). Consistent with prevailing Supreme Court precedent, we interpreted the "in custody" language as rendering § 2254 the exclusive mechanism for state prisoners to challenge the validity, the duration, and execution of their confinement. *Coady v. Vaughn*, 251 F.3d 480, 484–86 (3d Cir. 2001). As a consequence, a state prisoner who attempts to attack the validity, duration, or execution of her sentence by any other means is met with dismissal of her claims. *See Leamer v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002). One rationale is to ensure that state prisoners do not evade the § 2254 requirement that provides state courts with the opportunity to correct their own errors before a federal court is

13

called upon. *See Preiser v. Rodriguez*, 411 U.S. 475, 489–90 (1973).

Conversely, we have also held that a petitioner who seeks habeas relief for claims that do not qualify as attacking the fact, duration, or execution of a sentence may not maintain the suit as a habeas action. *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 242 n.5 (3d Cir. 2005); *see also Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998) (concerning a 28 U.S.C. § 2241 petition, which also covers challenges to the fact, duration, and execution of a sentence); *McGee*, 627 F.3d at 934 (same). But we do not automatically dismiss the claim in these instances. Instead, we maintain that "all [the petitioner] has done is mislabel his suit, and either he should be given leave to plead over or the mislabeling should simply be ignored." *Royce*, 151 F.3d at 118 (internal quotation marks omitted) (quoting *Graham v. Broglin,* 922 F.2d 379, 381–82 (7th Cir. 1991)); *see also Leamer*, 288 F.3d at 542 (suggesting that "an action under [42 U.S.C.] § 1983 is appropriate" where "a finding in plaintiff's favor would not alter his sentence or undo his conviction"); *McGee*, 627 F.3d at 934 (setting forth the question as whether the "petitioner . . ., a federal inmate, may maintain [his] suit as a habeas action under 28 U.S.C. § 2241, *or* whether he must re-file it as a civil rights action under [*Bivens*]." (emphasis added)).

Thus, a determination that a claim brought in habeas is not cognizable in habeas does not, by itself, end the inquiry.

2.

That said, as we previously alluded, granting the petition with respect to the GBMI claim requires concluding that Velazquez's guilty plea was invalid. Challenges to the

14

validity of a guilty plea are among those that make up "th[e] traditional scope of habeas corpus." *Preiser*, 411 U.S. at 486–87 (referencing, *inter alia*, *Von Moltke v. Gillies*, 332 U.S. 708 (1948), which involved a challenge to the validity of a guilty plea). This is true regardless of what the petitioner ultimately seeks to do once the plea is invalidated. *Compare Hill v. Lockhart*, 474 U.S. 52, 53 (1985) (seeking to exercise the right to trial) *with Missouri v. Frye*, 566 U.S. 134, 138 (2012) (seeking to enter a different guilty plea than the one already entered and accepted).

Velazquez's pro se filings describe the appropriate remedy in plain terms: but for counsel's errors, he would have received mental health treatment. Expectedly so, this expression glosses over the complex legal framework at play. That framework provides no guarantee that either hearing—the one for acceptance or the one for sentencing—would have ended in Velazquez's favor. Section 314(b) contemplates that a hearing might result in a denial of the GBMI plea, and thus instructs that a defendant will then have the ability to withdraw his plea entirely and invoke his right to trial. *See* section 314(b). And the benefits of section 9727(b) are contingent on an affirmative finding by way of section 9727(a). *See* section 9727 (a) & (b). Reading these together, then, when Velazquez argues that he suffered a deprivation, he is referring to a deprivation of the *process* these provisions provided him, which, in substance, means the *opportunity* for mental health treatment that the process facilitates. The appropriate remedy is thus not mental health treatment, albeit the object of the opportunity the process facilitates, but rather a restoration of the process itself. The course for doing so is to vacate the current judgment of conviction.

15

The Supreme Court's decision in *Lafler v. Cooper*, 566 U.S. 156 (2012), is instructive to this effect. Again, the Court did not hesitate to exercise habeas jurisdiction where the defendant had been convicted and sentenced, but argued that plea counsel's ineffective assistance led him to decline the previous plea offer. *See id.* at 173. More importantly, the remedy was not an alteration of the defendant's sentence to reflect what he would have received had the appropriate plea been entered. *Id.* at 170–71 (explaining that this is the remedy only in cases in which "the *sole advantage* a defendant would have received under the plea is a lesser sentence" (emphasis added)). Rather, the Court fashioned a remedy that would provide the defendant the opportunity of which he was deprived—that is, the opportunity to accept the prior plea offer. *See id* at 174–75. To do so, the Court ordered the State of Michigan to reoffer the plea agreement that the defendant previously turned down on counsel's advice. *Id.* at 174. And, "[*p*]*resuming* [the defendant] accept[ed]," the Court left it to the state trial courts to determine whether to vacate the [defendant]'s conviction and resentence him pursuant to the plea agreement. *Id.* (emphasis added). In sum then, for these purposes, the Court restored the state of the world to what it would have been had plea counsel never been constitutionally defective.

Though not the same remedy, the same approach is warranted here. Indeed, the *Lafler* Court only needed to ensure the plea agreement's re-offer in order to restore the state of the world absent plea counsel's constitutionally defective performance. A slightly different remedy is due if the same state of the world is to be approximated in our case. This is because Pennsylvania does not provide its courts the role seen in *Lafler* when it comes to GBMI pleas. *See Frye*, 566 U.S. at

16

150 ("States have the discretion to add procedural protections under state law if they choose."). Its statutory scheme mandates a particular course by its trial courts. This includes a hearing to determine whether a GBMI plea is accepted, and then, if it is not, that the defendant may insist on going to trial. As a result, maintaining the judgment of conviction pursuant to the defective plea and leaving it to the trial judge's discretion would be contrary to state law. Instead, a faithful application of the law counsels vacating the current judgment of conviction and permitting Velazquez to take advantage of the process the law affords him. This is the course we will take.

As such, Velazquez's pro se characterizations notwithstanding, this case necessarily implies a change to the fact of his conviction, and thus should be resolved within the parameters of habeas.

## B. Standard of Review

We review the District Court's and state court's decisions on Velazquez's GBMI claim *de novo*. The District Court's decision because it did not conduct an evidentiary hearing. *See McKeever v. Warden SCI-Graterford*, 486 F.3d 81, 83 (3d Cir. 2007); *Hakeem v. Beyer*, 990 F.2d 750, 758 (3d Cir. 1993). And the state court decision because the state courts did not adjudicate the claim on the merits, despite its being properly exhausted. *See Chadwick v. Janecka*, 312 F.3d 597, 605–06 (3d Cir. 2002).

There is no dispute that the state courts did not adjudicate Velazquez's GBMI claim on the merits. Trial counsel did not raise the claim on direct appeal. PCRA counsel falsely averred that Velazquez's GBMI plea was in fact accepted, and thus construed the claim as only speaking to

17

section 9727(a). The PCRA and Superior Courts did the same. As a result, the state courts "misunderstood the nature" of Velazquez's claim, and failed to adjudicate it on the merits. *Chadwick*, 312 F.3d at 606.

The Commonwealth appears to concede that there is no state court decision on the merits of the claim before us. However, it initially argued that this is because Velazquez failed to present his claim to the state courts, not because it was misconstrued. If successful, the consequence of this argument would have been twofold: (1) it would have meant that Velazquez failed to exhaust his GBMI claim, which warrants dismissal unless he could establish cause and prejudice, and (2) regardless of whether he could establish cause and prejudice for his failure to exhaust, the state court decision would be entitled to Anti-Terrorism and Effective Death Penalty Act deference.[4]

Neither consequence is warranted. The Commonwealth's failure-to-exhaust argument was always a nonstarter. Our jurisprudence merely requires a petitioner to give the state courts the "opportunity to pass on the merits of a claim." *Hameen v. State of Delaware*, 212 F.3d 226, 247 (3d Cir. 2000). That opportunity was provided here. The crux of the claim before us is whether counsel was ineffective for

---

[4] This means we would have only been able to grant relief from the state court's decision if it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," *id.* at § 2254(d)(1), or involved an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* at § 2254(d)(2).

failing to object to a defective plea procedure, and whether this resulted in Velazquez being relegated to a normal guilty plea. Velazquez's initial pro se brief is representative of the ways in which his filings provided ample basis to pass on the merits of this claim.

In it, he presents what section 314(b) required for a plea to be accepted, what it required in the event that a plea was not accepted, and what section 9727(a) and (b) provide in the event that a plea was accepted. He then explains that trial counsel was deficient for failing to object to the trial judge's failure to apply the procedures required by both. Along with that accurate description of the defects in the plea procedure, the state courts had in their possession the plea transcript and the plea documents, both of which corroborated the clear implication of Velazquez's argument: the GBMI plea was not, and could not have been, accepted.

The Commonwealth's initial view was that Velazquez's false averment that his GBMI plea had in fact been accepted changed the claim in its entirety. That is, rather than the claim before us, Velazquez presented to the state courts the separate claim that he was deprived of a hearing for mental health treatment purposes. We are not persuaded. And, as it turns out, nor was the Commonwealth. It conceded at argument that the claim was exhausted for substantially the reasons we have set forth. Oral Arg. Audio 19:38–49 (conceding that Velazquez articulated a section 314(b) defect "every step of the way").[5]

---

[5] The Commonwealth's remaining argument on this issue was that the state courts' failure to consider the claim prejudiced it because it could not develop a record regarding

19

We will therefore reach the merits of Velazquez's claim, and our review is *de novo*.

## C. Merits

On the merits, Velazquez claims that counsel was ineffective for failing to object to the defective plea process and, as a result, he was denied the opportunity to plead GBMI. *Strickland v. Washington*, 466 U.S. 668 (1984), provides the framework for analyzing such a claim. The operative inquiry is twofold: first, whether counsel was in fact ineffective and, second, if so, whether counsel's ineffectiveness prejudiced Velazquez. We answer both in the affirmative.

### 1.

The ineffectiveness inquiry centers on whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *United States v. Bui*, 795 F.3d 363, 366 (3d Cir. 2015) (citation omitted). This requires a showing that "counsel's representation fell below an objective standard of

the advice trial counsel gave Velazquez. Oral Arg. Audio 20:15–33. Even if we concluded that this somehow factors into whether the claim was exhausted in the first instance—which it does not—Velazquez's claim centers on trial counsel's failure to object to a defective plea procedure, not on any advice that trial counsel provided him. As a result, the record contains all that is relevant, which consists of the process Pennsylvania law requires, the failure to provide Velazquez that process, and counsel's failure to object.

reasonableness." *Lafler*, 566 U.S. at 163 (internal quotation marks omitted) (quoting *Hill*, 474 U.S. at 57).

This standard is easily met here. It is well established that "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Hinton v. Alabama*, 571 U.S. 263, 274 (2014). There is ample basis in the record to conclude that trial counsel was ignorant of the GBMI-plea procedures prescribed by Pennsylvania law. He concurred in the trial judge's suggestion that he would procure the necessary records and facilitate the requisite hearing, but failed to assure that this procedure was followed and failed to verify that the plea documents reflected the plea his client sought to enter. This falls below the performance expected of the counsel guaranteed by the Sixth Amendment.

2.

Velazquez's case for prejudice is that there is a reasonable probability that, but for counsel's errors, he would have entered a GBMI plea. Appellant's Op. Br. 28. Importantly, Pennsylvania law is clear that a GBMI plea will not operate to reduce the sentence of a defendant. *See* section 9727(a). This case thus presents a question of first impression for our Court: whether *Strickland* prejudice can be established in the plea context where there is no showing that the length of the petitioner's sentence will be affected.

Traditional inquiry for prejudice in the plea context is whether there is a reasonable probability that, but for counsel's errors, the petitioner would have foregone a guilty plea and insisted on trial. *Hill*, 474 U.S. at 59 (describing the inquiry as

21

"focus[ing] on whether counsel's constitutionally ineffective performance affected the *outcome* of the plea process" (emphasis added)). The proliferation of plea bargaining led the Supreme Court to expand this inquiry to cover instances in which the deprivation of the right to trial was not the concern, but rather the opportunity to enter a different guilty plea. *See Lafler*, 566 U.S. at 163–69 (stating that the fact that defendants "have no right to be offered a plea . . . nor a federal right that the judge accept it . . . is beside the point" (first alteration in original) (internal quotation marks omitted) (quoting *Frye*, 566 U.S. at 148)). However, the Court required that there be a showing as to whether the other plea would have been available, accepted by both the petitioner and the court, and, importantly, that the other plea offered "less severe" terms than the "judgment and *sentence*" that was in fact imposed. *Lafler*, 566 U.S. at 163–64 (emphasis added); *Frye*, 566 U.S. at 148–49 (same).

It is not clear that Velazquez would have met this standard. The record demonstrates that the GBMI plea was available, Velazquez attempted to enter it, and the trial judge sought to accept it. But, as the Commonwealth points out, nothing suggests that the claim's acceptance would have resulted in a finding that Velazquez was severely mentally ill at the time of sentencing. Equally, it is not clear that the mental health treatment that would result from such a finding would qualify as "less severe" terms than Velazquez's present sentence, given that the length of the sentence would not change.

To Velazquez's benefit, however, the *Hill* inquiry has since been expanded in three subsequent cases that are binding on our Court. This began with our precedential decision in *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841 (3d

22

Cir. 2017). The case involved an ineffective-assistance-of-counsel claim where the petitioner had been advised to forgo his right to a jury trial and to opt for a bench trial. *Id.* at 844–46. In determining the operative prejudice inquiry, the *Vickers* Panel labeled the inquiry set forth in *Hill* the "process-based analysis." *Id.* at 856. This was because the *Hill* inquiry did not involve examining the petitioner's likelihood of success had he insisted on trial, but merely whether he would have gone to trial at all—that is, whether he would have taken advantage of the process of which he was deprived. *See id.* at 855.

In contrast, our prior precedent for waivers of the right to jury trial required a showing that the jury trial would have resulted in a more favorable outcome than the bench trial. *See United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008). The *Vickers* Panel overturned this precedent on the basis that *Lafler* confirmed that *Hill*'s process-based analysis ought to govern. *See Vickers*, 858 F.3d at 857.[6] It then defined the proper

---

[6] The Panel explained that:

Our holding regarding the appropriate prejudice inquiry in this context, which merely aligns *Lilly* with the Supreme Court's subsequent decision in *Lafler*, does not necessitate en banc review. As occurs from time to time, 'a panel of our Court may decline to follow a prior decision of our Court without the necessity of an en banc decision when the prior decision conflicts with a Supreme Court decision.'

23

prejudice inquiry as "whether the defendant can demonstrate a reasonable probability that, but for counsel's ineffectiveness, he would have opted to exercise [the] right [at issue]." *Id.*

The Supreme Court affirmed the view espoused in *Vickers* less than a month later in *Lee v. United States*, 137 S. Ct. 1958 (2017), and more recently in *Garza v. Idaho*, 139 S. Ct. 738 (2019). In *Lee*, the petitioner was an immigrant who had been incorrectly advised that his acceptance of a plea offer would not have any immigration consequences. 137 S. Ct. at 1962–63. The petitioner in *Garza*'s requests to counsel to file a notice of appeal on his behalf had been denied by counsel on the basis that his plea agreements included two waivers of the right to appeal. 139 S. Ct. at 742–43. The Supreme Court found prejudice in both instances. *Lee*, 137 S. Ct. at 1967 (examining solely whether the petitioner "ha[d] adequately demonstrated a reasonable probability that he would have rejected the plea had he known that it would lead to mandatory deportation"); *Garza*, 139 S. Ct. at 746–48 (citing *Lee*, 137 S. Ct. at 1966–67, as supporting the proposition that, "when deficient counsel causes the loss of an entire proceeding, [the Court] will not bend the presumption-of-prejudice rule simply because a particular defendant seems to have had *poor prospects*" (emphasis added)).

Critically, it was clear that the right or opportunity of which the petitioners were deprived would not amount to a more favorable outcome, and certainly not one in the form of a lesser sentence. Indeed, in *Lee*, the Court acknowledged that the plea that would be vacated "carried a *lesser* prison sentence

---

*Vickers*, 858 F.3d at 857 n. 15 (quoting *United States v. Tann*, 577 F.3d 533, 541 (3d Cir. 2009)).

than [the petitioner] would have faced at trial," and that the petitioner "had no real defense to the charge" against him. *Lee*, 137 S. Ct. at 1962 (emphasis added). Similarly, in *Garza*, the Court acknowledged that the merits of the issues the petitioner wanted to raise on appeal were irrelevant; the only inquiry in the Court's view was whether the petitioner would have exercised his right to appeal, "with no need for a further showing of his claims' merit." 139 S. Ct. at 747 (internal quotation marks omitted).

The combined effect of *Vickers*, *Lee*, and *Garza* is that petitioners alleging ineffective assistance of counsel resulting in a deprivation of process need not show that the decision to undergo the process would have resulted in a more favorable outcome. Instead, they need only demonstrate a reasonable probability that, but for counsel's error(s), they would have made the decision—that is, chosen to exercise the right or take advantage of the opportunity of which they were deprived.

As a result, Velazquez does not need to demonstrate that his GBMI plea is likely to be accepted or that a favorable finding of severe mental illness will result. Nor does he need to demonstrate that the outcome of the two findings will be a lesser sentence. We will find prejudice if there is a reasonable probability that, but for trial counsel's failure to object to the defective plea procedure, Velazquez would have taken advantage of the process of which he was deprived. The record is unequivocal that this is the case. The only hindrance to Velazquez's efforts to enter a GBMI plea was the constitutionally defective assistance he received from trial counsel.

* * * * *

In sum, we exercise habeas jurisdiction and review the District Court's and state court's decisions on Velazquez's GBMI claim *de novo*. We conclude that trial counsel rendered ineffective assistance, and that Velazquez was prejudiced as a result. We will therefore vacate the District Court's order and remand with instructions to grant the petition for the writ with respect to Velazquez's GBMI claim. The grant shall vacate Velazquez's present judgment of conviction.