**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee*,

v.

MIGUEL PEREZ-SILVAN,
    *Defendant-Appellant.*

No. 16-10177

D.C. No.
4:15-cr-01805-
DCB-CRP-1

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee*,

v.

MIGUEL PEREZ-SILVAN, AKA Miguel
Perez-Silva, AKA Miguel Silvan-
Perez,
    *Defendant-Appellant.*

No. 16-10205

D.C. No.
4:10-cr-02506-
DCB-CRP-1

OPINION

Appeal from the United States District Court
for the District of Arizona
David C. Bury, Senior District Judge, Presiding

Submitted May 11, 2017[*]
Pasadena, California

Filed June 28, 2017

Before: Diarmuid F. O'Scannlain and John B. Owens,
Circuit Judges, and Dana L. Christensen,[**] Chief District
Judge.

Opinion by Judge O'Scannlain;
Concurrence by Judge Owens

---

**SUMMARY**[***]

---

**Criminal Law**

The panel affirmed a sentence for illegal reentry after
deportation, and dismissed an appeal from a judgment
revoking supervised release for a prior illegal reentry
conviction.

The panel held that even if the defendant's appeal from
the judgment revoking supervised release had been timely,

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Dana L. Christensen, Chief United States District
Judge for the District of Montana, sitting by designation.

[***] This summary constitutes no part of the opinion of the court. It
has been prepared by court staff for the convenience of the reader.

he waived his ability to contest the revocation by neglecting to brief the merits.

The panel held that the district court did not err by applying a 16-level crime-of-violence enhancement to the defendant's illegal reentry sentence pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii) (2015) based on his prior aggravated assault conviction under Tennessee Code Annotated § 39-13-102.

The panel explained that because §§ 39-13-102(a)(1) and (a)(2) carry different penalties, they necessarily contain distinct elements, rather than alternative means of committing aggravated assault, and that § 39-13-102(a) is therefore divisible into two crimes. Looking to the charging documents, the panel observed that the defendant was convicted under § 39-13-102(a)(1), which criminalizes intentional or knowing assault, rather than § 39-13-102(a)(2), which covers reckless assault. The panel therefore concluded that the defendant's claim that his statute of conviction does not qualify as a crime of violence because it can be violated by recklessness necessarily fails. The panel also explained that although an offensive touching under § 39-13-101(a)(3) can satisfy the second element of § 39-13-102(a)(1), an aggravated assault conviction further requires that the offensive touching "[c]ause[] serious bodily injury to another" or "use[] or display[] a deadly weapon," both of which entail the use of violent force.

Concurring, Judge Owens applauded the United States Sentencing Commission for reworking § 2L1.2, which has been simplified since the defendant was sentenced; he urged the Commission to continue to simplify the Guidelines to avoid frequent complicated sentencing adventures.

**COUNSEL**

Myrna R. Beards, Law Office of Myrna R. Beards, Tucson, Arizona, for Defendant-Appellant.

Ryan P. Dejoe, Assistant United States Attorney; Robert L. Miskell, Appellate Chief; United States Attorney's Office, Tucson, Arizona; for Plaintiff-Appellee.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether a "crime of violence" sentencing enhancement to a sentence for illegal reentry after deportation can be based on a prior Tennessee state conviction for aggravated assault.

I

Miguel Perez-Silvan, a citizen of Mexico, was charged with illegal reentry after deportation in violation of 8 U.S.C. § 1326, enhanced by § 1326(b)(2), on October 14, 2015, when he was found near Quijotoa, Arizona on September 17, 2015, following a previous deportation from the United States on August 19, 2015. On December 8, 2015, Perez-Silvan pled guilty to the indictment without a plea agreement.

On December 29, 2015, the government filed a motion to revoke Perez-Silvan's supervised release for a prior illegal reentry conviction from 2011. On January 29, 2016, Perez-Silvan appeared with counsel and admitted to violating this supervised release agreement.

At sentencing on April 11, 2016, the district court found that Perez-Silvan had an offense level of twenty-one for the illegal reentry charge, based in part on a sixteen-level "crime of violence" enhancement under U.S.S.G. §2L1.2 for a prior conviction of aggravated assault. In 2005, Perez-Silvan had pled guilty to an indictment charging that he "did unlawfully and intentionally or knowingly cause bodily injury to Jose Molina, by use of a deadly weapon, in violation of Tennessee Code Annotated § 39-13-102." Applying the offense level of twenty-one and a criminal history of six, the district court concluded that the Guideline range for the illegal reentry violation was 77–96 months; it imposed a sentence of seventy-seven months.

For the supervised release violation, the district court calculated a Guideline range of 21–24 months, and it imposed a sentence of twenty-one months to run consecutively to the illegal reentry sentence.

Perez-Silvan filed a timely notice of appeal (No. 16-10177), on April 19, 2016, from the district court's judgment on the illegal reentry conviction. His notice of appeal (No. 16-10205) from the district court's judgment on the supervised release violation, filed on May 12, 2016, was seventeen days late.

II

Perez-Silvan acknowledges that under Federal Rule of Appellate Procedure 4(b)(1)(A)(i) his appeal in No. 16-10205 was untimely. Nonetheless, following *United States v. Ono*, 72 F.3d 101, 103 (9th Cir. 1995), he requests that we issue a limited remand to the district court to determine whether there was "excusable neglect" for his late appeal.

However, as the government observes, Perez-Silvan has otherwise failed to prosecute the appeal in No. 16-10205. Federal Rule of Appellate Procedure 28(a) requires a party's opening brief to contain "a statement of the issues presented for review," and an "argument . . . [with] appellant's contentions and the reasons for them." Indeed, "on appeal, arguments not raised by a party in its opening brief are deemed waived." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999); *see also Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief.").

Perez-Silvan offers no arguments for why the district court's decision to revoke his supervised release was in error, nor does he list it as an issue in his opening brief. By neglecting to brief the merits of the issue, he has not adhered to Rule 28. Thus, there is no need to remand to the district court to determine if Perez-Silvan's failure to file a timely appeal was excusable. Even if his appeal had been timely, Perez-Silvan has waived his ability to contest the revocation of his supervised release. Thus, the appeal in No. 16-10205 must be dismissed. *See* Ninth Circuit Rule 42-1.

## III

In No. 16-10177, the illegal reentry conviction, Perez-Silvan contends that the district court erred by imposing a sentencing enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii), which provides that a defendant's base offense level should be increased by sixteen "[i]f the defendant previously was deported . . . after . . . a conviction for a felony that is . . . a crime of violence."[1] Perez-Silvan

---

[1] Perez-Silvan was sentenced under the 2015 version of the Sentencing Guidelines, so all references to the Guidelines refer to that

argues that his prior conviction for aggravated assault in violation of Tennessee Code Annotated § 39-13-102 was not a crime of violence for purposes of this provision.[2]

A

Under U.S.S.G. § 2L1.2(b)(1)(A)(ii), a conviction is a crime of violence "if it either (1) constitutes one of the crimes listed in the 'enumerated offense' prong of the definition, or (2) 'has an element the use, attempted use, or threatened use of physical force against the person of another' under the definition's second clause, referred to as the 'element' prong or test." *United States v. Grajeda*, 581 F.3d 1186, 1189–90 (9th Cir. 2009) (quoting U.S.S.G. § 2L1.2 cmt. n.1(B)(iii)).

To determine whether a prior state conviction qualifies as a crime of violence under either prong, we employ the categorical approach set out by the Supreme Court in *Taylor v. United States*, 495 U.S. 575, 602 (1990). Thus, we ask

---

version. The Guidelines have since been amended, removing subsection § 2L1.2(b)(1)(A)(ii) entirely, and now base enhancements on the length of a prior sentence. *See* U.S.S.G. § 2L1.2(b) (2016).

[2] Although Perez-Silvan acknowledged that his aggravated assault conviction met the definition for a crime of violence before the district court, "[w]e are not bound by a party's concession as to the meaning of the law." *United States v. Ogles*, 440 F.3d 1095, 1099 (9th Cir. 2006) (en banc). Nonetheless, our review of his sentence is only for plain error. *See United States v. Pimentel-Flores*, 339 F.3d 959, 967 (9th Cir. 2003) ("[W]here a party fails to raise an objection below, an appellate court may entertain such an objection 'when plain error has occurred and an injustice might otherwise result.'" (quoting *United States v. Flores-Payon*, 942 F.2d 556, 558 (9th Cir. 1991))). However, whether a prior conviction qualifies as a crime of violence under U.S.S.G. § 2L1.2(b) is a legal question that we review *de novo*. *United States v. Guzman-Mata*, 579 F.3d 1065, 1068 (9th Cir. 2009).

whether the statute of conviction "is categorically a crime of violence by assessing whether the 'full range of conduct covered by [the statute] falls within the meaning of that term.'" *Grajeda*, 581 F.3d at 1189 (alteration in original) (quoting *United States v. Juvenile Female*, 566 F.3d 943, 946 (9th Cir. 2009)). A statute of conviction that punishes conduct that is not covered by the federal definition of a "crime of violence" cannot be a "crime of violence." *United States v. Benally*, 843 F.3d 350, 352 (9th Cir. 2016).

If the statute does not qualify as a categorical crime of violence, we ask whether it is "a so-called 'divisible statute.'" *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2014). A statute is divisible if it lists "multiple alternative elements" as opposed to "various factual means of committing a single element." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016).

Where a statute is divisible, we apply the "modified categorical approach" under which we "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative element formed the basis of the defendant's prior conviction." *Descamps*, 133 S. Ct. at 2281. Then we "do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." *Id.*

B

At the time of Perez-Silvan's conviction, Tennessee Code Annotated § 39-13-102 provided in relevant part:

>    (a) A person commits aggravated assault
>        who:

(1) Intentionally or knowingly commits an assault as defined in § 39-13-101 and:

    (A) Causes serious bodily injury to another; or

    (B) Uses or displays a deadly weapon; or

(2) Recklessly commits an assault as defined in § 39-13-101(a)(1) and:

    (A) Causes serious bodily injury to another; or

    (B) Uses or displays a deadly weapon.

And Tennessee Code Annotated § 39-13-101 provided in relevant part:

(a) A person commits assault who:

(1) Intentionally, knowingly or recklessly causes bodily injury to another;

(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

(3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the

contact as extremely offensive or provocative.

C

With respect to the elements prong, Perez-Silvan maintains that his conviction for aggravated assault in violation of Tennessee Code Annotated § 39-13-102(a) does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

1

First, Perez-Silvan argues that Tennessee Code Annotated § 39-13-102(a) is indivisible and overbroad. Following our decisions in *United States v. Garcia-Jimenez*, 807 F.3d 1079, 1087 (9th Cir. 2015), and *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132 (9th Cir. 2006) (en banc), Perez-Silvan contends that because § 39-13-102(a) covers reckless behavior, his aggravated assault conviction cannot be a crime of violence.

a

Perez-Silvan bases his indivisibility argument on Tennessee caselaw. In *State v. Hammonds*, 30 S.W.3d 294, 298 (Tenn. 2000), the Tennessee Supreme Court described aggravated assault under § 39-13-102(a) as "consist[ing] of three elements: (1) *mens rea*; (2) commission of an assault as defined in 39-13-101; and (3) (a) serious bodily injury or (b) use or display of a deadly weapon." The issue in *Hammonds* was whether an aggravated assault indictment which did not specify the type of simple assault committed in violation of Tennessee Code Annotated § 39-13-101 (element two) could be sufficient. *Id.* The Tennessee

Supreme Court concluded that it was not necessary for the indictment to specify the type of simple assault committed because each of the three ways to commit assault under § 39-13-101 were merely different "means" of fulfilling the second element of aggravated assault. *Id.* at 300. Under Tennessee law, "an indictment need not allege the specific theory or means by which the State intends to prove each element of an offense." *Id.*

Because *Hammonds* refers to various "means" of committing the second element of aggravated assault, Perez-Silvan argues that all of § 39-13-102(a) is indivisible. This is a plain misreading of *Hammonds*, however, which merely indicates that the second element of aggravated assault is indivisible. Thus, courts cannot employ the modified categorical approach to determine which variant of simple assault under § 39-13-101 the defendant has committed. *See Hammonds*, 30 S.W.3d at 302. *Hammonds* makes no holding regarding whether § 39-13-102(a) can be divided into two separate offenses: (a)(1)—intentional and knowing aggravated assault—and (a)(2)—reckless aggravated assault.

*Hammonds* does broadly refer to the first element of aggravated assault under § 39-13-102(a) as "*mens rea*." *Id.* at 298. But far from holding that § 39-13-102(a) is indivisible, *Hammonds* appears to support the notion that (a)(1) and (a)(2) are two separate offenses. When outlining the statute at issue, the Tennessee Supreme Court quoted § 39-13-102(a)(1), not § 39-13-102(a)(2). *See id.* And, the Court determined that the indictment adequately alleged the element of *mens rea* by stating "intentionally and knowingly." *Id.* at 302. Indeed, the Tennessee Supreme Court never discussed § 39-13-102(a)(2) in *Hammonds*. Thus, by analyzing a conviction under § 39-13-102(a)(1),

apart from § 39-13-102(a)(2), *Hammonds* implies that the Tennessee Supreme Court views the two subsections as different crimes.

Perez-Silvan also relies on *State v. Crowe*, 914 S.W.2d 933 (Tenn. Crim. App. 1995). In that case, Crowe, who had been convicted of aggravated assault in violation of § 39-13-102, objected to jury instructions stating "that the elements of aggravated assault are that a defendant has 'intentionally, knowingly, or recklessly caused serious bodily injury' to the victim." *Id.* at 936. The defendant argued that because his indictment charged him only with "knowingly" committing assault, he was not on "notice that the jury would be considering 'reckless' as well as 'knowing' behavior." *Id.*

The court held that the jury instructions were not in error because under Tennessee law, "recklessness" was necessarily included in "intentional" and "knowing" conduct. *Id.* at 937. Thus, the state could not "prove that an offense was committed 'knowingly' without proving that it was committed 'recklessly.'" *Id.*

Perez-Silvan maintains that based on *Crowe* "proof that the defendant . . . *acted recklessly*—although *not* alleged in the indictment—would satisfy the *mens rea* requirement." But this is a misreading of *Crowe*. While observing that recklessness is necessarily included in a mens rea of knowledge, the Tennessee Court of Criminal Appeals specifically noted that "[t]he converse, however, is not true. A 'reckless' act is not necessarily done 'knowingly.'" *Crowe*, 914 S.W.2d at 937 n.2. Thus, Perez-Silvan's argument fails—recklessness cannot be substituted for knowing or intentional conduct.

Nonetheless, the court in *Crowe* also noted that all "three mental states [intentionally, knowingly, and recklessly] are

listed in Tennessee Code Annotated Section 39-13-101 and incorporated into Section 39-13-102." *Id.* at 936. It further observed that "[t]he mental elements of assault are stated in the alternative" and concluded that "[p]roof that appellant acted knowingly or recklessly would satisfy the mens rea requirement." *Id.* at 938.

While this might appear to support Perez-Silvan's claim that § 39-13-102(a) is indivisible, the court in *Crowe* appeared to be describing the statute generally. There is no doubt that § 39-13-102 includes all three mental states: § 39-13-102(a)(1) provides that an aggravated assault can be convicted "[i]ntentionally or knowingly" and § 39-13-102(a)(2) provides that an aggravated assault can be committed "recklessly." *Crowe* never addressed whether § 39-13-102 could be divided into two separate offenses. Thus, *Crowe* is not dispositive.

Perez-Silvan's reliance on Tennessee caselaw is misplaced.

b

There is a far simpler answer to the question of divisibility that Perez-Silvan ignores. As the government observes, according to *Mathis*, "[i]f statutory alternatives carry different punishments, then under *Apprendi* they *must be* elements." 136 S. Ct. at 2256 (emphasis added).

At the time of Perez-Silvan's conviction, Tennessee Code Annotated § 39-13-102(d)(1) provided that an "[a]ggravated assault under subdivision (a)(1) . . . is a Class C felony," while "[a]ggravated assault under subdivision (a)(2) is a Class D felony." Thus, because (a)(1) and (a)(2) carry different penalties, they necessarily contain distinct elements, rather than alternative means of committing

aggravated assault. Thus, under *Mathis*, § 39-13-102(a) is divisible into two crimes: aggravated assault in violation of (a)(1) and aggravated assault in violation of (a)(2).[3]

c

Because § 39-13-102(a) is divisible, we must look to Perez-Silvan's charging documents to determine the offense for which he was convicted. *See Descamps*, 133 S. Ct. at 2281. Perez-Silvan's indictment charged that he "did unlawfully and *intentionally or knowingly* cause bodily injury to Jose Molina, by use of a deadly weapon, in violation of Tennessee Code Annotated 39-13-102." (emphasis added). Thus, there is no question that Perez-Silvan was convicted under § 39-13-102(a)(1), which criminalizes "intentional[] or knowing[]" assault, rather than § 39-13-102(a)(2), which covers "reckless[]" assault. Therefore, because Perez-Silvan was convicted under § 39-13-102(a)(1), his claim that his statute of conviction does not qualify as a crime of violence because it can be violated by recklessness necessarily fails.[4]

2

Next, Perez-Silvan maintains that his aggravated assault conviction does not qualify as a crime of violence because

---

[3] Notably, before *Mathis*, the Sixth Circuit reached the same conclusion—holding that § 39-13-102 is divisible. *See Braden v. United States*, 817 F.3d 926, 933 (6th Cir. 2016).

[4] The government contends that reckless conduct can qualify as a crime of violence under the Supreme Court's recent opinion in *Voisine v. United States*, 136 S. Ct. 2272, 2278 (2016). Because we conclude that § 39-13-102(a) is divisible and Perez-Silvan was convicted under § 39-13-102(a)(1), we need not address this argument.

the second element of aggravated assault in § 39-13-102(a)(1), which requires the commission of a simple assault in violation of § 39-13-101, can be fulfilled by "[i]ntentionally or knowingly caus[ing] physical contact with another [that] a reasonable person would regard . . . as extremely offensive or provocative." Tenn. Code Ann. § 39-13-101(a)(3).

Perez-Silvan is correct that "mere[] touching," the common law definition of a battery, does not satisfy the level of force required for a crime of violence. *Johnson v. United States*, 559 U.S. 133, 139–43 (2010).[5] According to *Johnson*, in the context of a crime of violence, "physical force" entails "*violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140. Thus, on its own, an offensive "physical contact" in § 39-13-101(a)(3) would not qualify as a crime of violence.

Nonetheless, Perez-Silvan misunderstands his statute of conviction. Even though an offensive touching under § 39-13-101(a)(3) can satisfy the second element of § 39-13-102(a)(1), an aggravated assault conviction further requires that the offensive touching "[c]ause[] serious bodily injury to another" or "use[] or display[] a deadly weapon." Tenn. Code. Ann. § 39-13-102(a)(1)(A)–(B); *see also Hammonds*, 30 S.W.3d at 298. Both of these requirements entail the use of violent force.

---

[5] *Johnson* held this in the context of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(i), but the definition for a violent felony given there (a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another") is identical to the definition of a crime of violence in U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

a

Since *Johnson* requires "force capable of causing physical pain or injury," 559 U.S. at 140, an offensive touching under § 39-13-101(a)(3) that causes "serious bodily injury," § 39-13-102(a)(1)(A), undoubtedly involves the use of violent physical force.[6]

Indeed, in evaluating similar state statutes, we have repeatedly found that a simple assault accomplished by "unlawful touching" which becomes aggravated because it "results in substantial bodily harm" requires the use of violent physical force. *United States v. Lawrence*, 627 F.3d 1281, 1286–88 (9th Cir. 2010); *see also Grajeda*, 581 F.3d at 1192. "[A]ssault statutes penalizing intentional conduct that results or is likely to result in such bodily injury necessarily require force that 'go[es] beyond the "least touching," and represents "actual force" that is violent in nature.'" *Lawrence*, 627 F.3d at 1287 (second alteration in original) (quoting *Grajeda*, 581 F.3d at 1192). Indeed, a defendant charged with "assault resulting in bodily injury,

---

[6] At the time of Perez-Silvan's conviction, Tennessee code defined a "serious bodily injury" as a "bodily injury" involving:

> (A) A substantial risk of death;
>
> (B) Protracted unconsciousness;
>
> (C) Extreme physical pain;
>
> (D) Protracted or obvious disfigurement;
>
> (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty;

Tenn. Code Ann. § 39-11-106(a)(34) (2006).

*necessarily* must have committed an act of force in causing the injury." *United States v. Juvenile Female*, 566 F.3d 943, 948 (9th Cir. 2009) (emphasis added).

b

Likewise, an offensive touching that involves "use[] or display[] [of] a deadly weapon," the other aggravating factor under § 39-13-102(a)(1), also necessitates violent physical force.

As in *United States v. Jennen*, 596 F.3d 594, 601 (9th Cir. 2010), "we are not faced with the question of whether 'mere offensive touching' meets the force requirement of a crime of violence, but rather whether unlawful touching *using a deadly weapon* meets the force requirement of a crime of violence. We conclude that it does." "[E]ven the least touching with a deadly weapon or instrument is violent in nature." *Grajeda*, 581 F.3d at 1192. And, regardless of whether the deadly weapon itself touches the victim's body, we cannot imagine one using or displaying a deadly weapon in the course of an offensive touching without threatening the use of violent force. We have repeatedly held that "[a]ssault with a deadly weapon . . . *necessarily* entails the threatened use of force against the person of another." *Camacho-Cruz v. Holder*, 621 F.3d 941, 943 (9th Cir. 2010) (emphasis added).[7]

---

[7] While the Nevada law at issue in *Camacho-Cruz* defined assault differently, as "intentionally placing another person in reasonable apprehension of immediate bodily harm," 621 F.3d at 943 (quoting Nev. Rev. Stat. § 200.471), *Camacho-Cruz* made plain that the "threatened use of force is sufficient for a crime to constitute a crime of violence," *id.*; *see also Juvenile Female*, 566 F.3d at 947–48. Holding a knife or

While this court has held that merely being in possession of a deadly weapon does not amount to a threat to use force, *United States v. Werle*, 815 F.3d 614, 621–22 (9th Cir. 2016), the clear teaching of *Jennen*, *Grajeda*, and *Camacho-Cruz* is that using or displaying a deadly weapon does. Therefore, an offensive touching that is accomplished while using or displaying a deadly weapon in violation of § 39-13-102(a)(1)(B) involves violent physical force.

c

There is no dispute that the other means of committing a simple assault under Tennessee Code Annotated § 39-13-101(a)—(1) "caus[ing] bodily injury to another" or (2) "caus[ing] another to reasonably fear imminent bodily injury"—entail the use or threatened use of physical force when they result in "serious bodily injury" or involve the "use[] or display[] of a deadly weapon." Tenn. Code. Ann. § 39-13-102(a). Aggravated assault under Tennessee Code Annotated § 39-13-102(a)(1) is a crime of violence for purposes of U.S.S.G. 2L1.2(b)(1)(A)(ii).[8]

IV

No. 16-10177 is **AFFIRMED** and No. 16-10205 is **DISMISSED**.

---

gun while poking a person in the back is the quintessential example of a threat of violence.

[8] Because we hold that Tennessee Code Annotated § 39-13-102(a)(1) is a crime of violence under the element prong, there is no need to address whether it is also a crime of violence under the enumerated offense prong.

OWENS, Circuit Judge, concurring:

I fully join Judge O'Scannlain's opinion, which faithfully applies controlling law to the question at hand. But what a bad hand it is – requiring more than 16 pages to resolve an advisory question. I applaud the United States Sentencing Commission for reworking U.S.S.G. § 2L1.2 to spare judges, lawyers, and defendants from the wasteland of *Descamps*. *See* U.S.S.G. supp. app. C, amend. 802 (2016); U.S.S.G. § 2L1.2(b) (2016). I continue to urge the Commission to simplify the Guidelines to avoid the frequent sentencing adventures more complicated than reconstructing the Staff of Ra in the Map Room to locate the Well of the Souls. *Cf. Almanza-Arenas v. Lynch*, 815 F.3d 469, 482–83 (9th Cir. 2016) (en banc) (Owens, J., concurring); Raiders of the Lost Ark (Paramount Pictures 1981).