NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2062
_____

RONDELL SLAUGHTER,
Appellant

v.

SUPERINTENDENT PHOENIX SCI; THE DISTRICT ATTORNEY OF THE
COUNTY OF PHILADELPHIA; THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-16-cv-04143)
District Judge: Honorable Joel H. Slomsky
_____

Argued March 5, 2020

Before: SMITH, *Chief Judge*, HARDIMAN, and KRAUSE, *Circuit Judges*.

(Filed: June 10, 2020)

Stephen W. Kirsch
Arianna J. Freeman
Leigh M. Skipper
Joel Mandelman (**Argued**)
Federal Community Defender Office
for the Eastern District of Pennsylvania
Suite 540 West—Curtis Center
601 Walnut Street
Philadelphia, PA 19106
        *Counsel for Appellant Rondell Slaughter*

Joshua S. Goldwert (**Argued**)
Max C. Kaufman
Nancy Winkelman
Carolyn Engel Temin
Lawrence S. Krasner
Philadelphia County Office of the District Attorney
3 South Penn Square
Philadelphia, PA 19107
      *Counsel for Appellees Superintendent Phoenix SCI, District Attorney of Philadelphia, and Attorney General of Pennsylvania*

_____

OPINION[*]
_____

HARDIMAN, *Circuit Judge*.

Rondell Slaughter appeals an order of the District Court denying his petition for writ of habeas corpus under 28 U.S.C. § 2254. We will affirm.

I[1]

A Pennsylvania state court jury convicted Slaughter of arson, criminal conspiracy, and aggravated assault. The jury began its deliberations on a Thursday. The next day, the jury notified the court that it was at an impasse on some charges, so the court recessed for the weekend. On Monday, the jury returned with one juror absent. Because the absent juror was sick, the court substituted an alternate juror over Slaughter's counsel's objection. When the recomposed jury reached another impasse on Tuesday, the court

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2254(a). We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a).

2

encouraged it to continue deliberations. The jury reached a verdict the next day. The court sentenced Slaughter to 35 to 70 years' imprisonment.

After exhausting his direct appeal rights, Slaughter sought relief under Pennsylvania's Post-Conviction Relief Act (PCRA). The Court of Common Pleas appointed counsel, who filed two amended PCRA petitions. The court ultimately dismissed Slaughter's Second Amended PCRA Petition.

The Pennsylvania Superior Court appointed new counsel and allowed Slaughter to appeal the order denying his Second Amended PCRA petition. On appeal, Slaughter argued his trial counsel was ineffective for failing to properly object to "the replacement of an already dismissed alternate juror after the juror had started deliberations." App. 618–19. And although he also claimed his counsel on direct appeal was ineffective, he gave no factual or legal basis for this claim.

The Superior Court held that Slaughter's trial counsel was ineffective, reversed the lower court's order dismissing his PCRA petition, and granted him a new trial. *Commonwealth v. Slaughter*, 2014 WL 10588398, at \*6 (Pa. Super. Ct. 2014). The Superior Court's decision was based on *Commonwealth v. Saunders*, 686 A.2d 25 (Pa. Super. Ct. 1996), which held that the Pennsylvania Rules of Criminal Procedure do not authorize a trial court to replace a juror after deliberations have begun. *Id.* at \*4. *Saunders* also held that "where the trial court has substituted an alternate juror after deliberations have begun, there is a presumption of prejudice to the defendant." *Saunders*, 686 A.2d at 28. To overcome this presumption, a trial court must: (1) question the alternate and remaining jurors to ensure the alternate has not been exposed to improper outside

3

influences and deliberations can begin anew; and (2) instruct the recomposed jury that the principal juror was discharged for personal reasons only and that deliberations must begin anew. *Id.* at 29. Because Slaughter's counsel did not properly object when the trial court failed to adequately question the alternate and remaining jurors, the Superior Court ordered a new trial.

The Commonwealth appealed and the Pennsylvania Supreme Court vacated the Superior Court's order in a summary per curiam order. *Commonwealth v. Slaughter*, 120 A.3d 992 (Pa. 2015). It remanded the case to the Superior Court so it could "reevaluate [Slaughter's] ineffectiveness claim under the *Pierce/Strickland* standard requiring a showing of actual prejudice . . . ." *Id.* On remand, Slaughter filed a supplemental brief that largely mirrored his prior appellate brief before the Superior Court. Slaughter again claimed his trial counsel was ineffective "for failing to object to the replacement of an already dismissed alternate juror after the juror had started deliberations." App. 636. He mentioned appellate counsel only in passing. Applying *Strickland*, the Superior Court held Slaughter did not show he was prejudiced by the trial court's failure to question the jurors. *Commonwealth v. Slaughter*, 2016 WL 298642, at *6–7 (Pa. Super. Ct. 2016). The Pennsylvania Supreme Court denied review.

Slaughter then filed a pro se petition for writ of habeas corpus in federal court under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254. The District Court referred the case to a magistrate judge, who recommended denial of Slaughter's claims for relief. Slaughter filed objections to the Report and Recommendation (R&R), but the District Court approved and adopted the R&R and

4

denied Slaughter's petition. Slaughter appealed and this Court granted a certificate of appealability.

## II

Our certificate of appealability asked the parties to address whether the state courts reasonably applied *Strickland* when deciding (1) whether trial counsel was ineffective for failing to object to the trial court's jury instruction in seating an alternate juror after the jury had started deliberations; and (2) whether appellate counsel was ineffective for failing to challenge the trial court's decision to seat an alternate juror after deliberations had begun and its jury instruction in seating the alternate juror. The District Court found that Slaughter procedurally defaulted on the first issue. And because Slaughter did not properly raise the second issue in his habeas petition, the District Court did not consider it either.

We disagree that Slaughter defaulted on the first issue. We will nevertheless affirm the District Court because the state court reasonably applied *Strickland*. *See* 28 U.S.C. § 2254(d); *Simmons v. Beard*, 590 F.3d 223, 231 (3d Cir. 2009). As for the second issue, after reviewing the record, Slaughter's counsel was "constrained to concede that [the ineffective assistance of appellate counsel claim was not fairly presented to the state courts]." Oral Argument at 6:25–38, available at https://www.ca3.uscourts.gov/oral-argument-recordings; *see id.* at 1:27–38, 3:07–24. We commend counsel for his candor. His ethical duty required this concession because Slaughter did not properly raise an ineffective assistance of appellate counsel claim in the state courts, in his habeas petition, or in his motion for a certificate of appealability. *See* Pa. R. Prof'l Conduct 3.1 cmt. 2

5

("What is required of lawyers, however, is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions.").

A

Slaughter raised the issue of whether his trial counsel was ineffective for failing to object to the trial court's jury instruction in seating an alternate juror. He claimed in his PCRA appellate briefs that trial counsel was ineffective for failing to "properly object" to the court's decision to empanel the alternate juror. App. 619–21. Although this claim lacks specificity, a court could reasonably construe it to be a claim challenging trial counsel's failure to object to the lack of the jury instruction required by *Saunders*. Because Slaughter properly raised this claim and the state court adjudicated it on the merits, we review it under AEDPA's deferential standard. So the question is not whether the state court's holding was wrong, but whether it was reasonable. Indeed, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Slaughter claims the state courts unreasonably applied *Strickland* in determining that he failed to show his trial counsel was ineffective. Under *Strickland*'s familiar two-part test, we consider whether counsel's performance was deficient and, if so, whether it prejudiced Slaughter. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). But "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, the review is 'doubly' so." *Richter,* 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). We are "not authorized to grant

6

habeas corpus relief simply because we disagree with the state court's decision or because we would have reached a different result if left to our own devices." *Werts v. Vaughn,* 228 F.3d 178, 197 (3d Cir. 2000) (citing *Matteo v. Superintendent, SCI Albion,* 171 F.3d 877, 888 (3d Cir. 1999)).

On remand from the Pennsylvania Supreme Court, the Superior Court considered whether Slaughter could establish that his trial counsel caused him actual prejudice when counsel failed to properly object to the substitution of the alternate juror. *Slaughter*, 2016 WL 298642, at *6–7. The court held Slaughter did not show that the alternate—or any other—juror was exposed to any outside influence. *Id.* at *7. Instead, Slaughter proffered "mere speculation," which cannot establish actual prejudice. *Id.*; *see Strickland*, 466 U.S. at 694 (a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

We hold the Superior Court's decision was not unreasonable because Slaughter failed to show that any jurors had been exposed to outside influence or that the deliberations were otherwise tainted by the belated substitution. Instead, he assumed prejudice by the mere fact that the recomposed jury reached a verdict after the original jury deadlocked on some issues. This assumption ignores that the recomposed jury deadlocked, just like the original jury, before ultimately returning its guilty verdict. It also ignores the possibility that the original jury, if given more time, likewise may have reached the same verdict after the impasse. For these reasons, we conclude that Slaughter's first argument is unavailing.

7

B

Next, we address Slaughter's ineffective assistance of appellate counsel claim. We will deny relief because, as his counsel conceded at argument, Slaughter did not fairly present his claim to the state courts. *See Picard v. Connor*, 404 U.S. 270, 275 (1971).

"A petitioner can 'fairly present' his claim through: (a) reliance on pertinent federal cases; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Nara v. Frank*, 488 F.3d 187, 198 (3d Cir. 2007), as amended (June 12, 2007). Slaughter did not satisfy any of these requirements.

It's important to note that Slaughter did properly raise an ineffective assistance of appellate counsel claim in his Second Amended PCRA Petition in the Court of Common Pleas. There he claimed: "Petitioner's appellate counsel was ineffective for failing to raise on appeal the issue of the Court's refusal to accept or record the first jury's verdict *and* the Court's empaneling a new jury after the original one had begun deliberations." App. 595 (emphasis added). He further alleged, "there could have been no rational, strategic or tactical reason for counsel to have failed to have raised the [*Saunders*] issue[] on appeal." App. 602. By raising it properly in the Court of Common Pleas, we know Slaughter—who was represented by counsel at the time—understood this claim and how to present it.

But Slaughter's claims changed in the Superior Court, where he mentioned appellate counsel only twice. In a point heading, he claimed:

> The Appellant was denied due process and effective assistance of counsel by both trial and appellate counsel where there was a failure to object to and/or request that the jury's partial verdict be recorded before the trial court terminated deliberations and seated the already dismissed alternate juror to begin new deliberations.

App. 618 (initial brief), 636 (on remand). He then directed his argument entirely at trial counsel before making another passing reference to appellate counsel:

> [T]he trial court's post-submission substitution of the alternate . . . violated the rule of law in *Saunders*. Counsel should have properly preserved this issue since it violated the Appellant's right to a fair trial. If it was not for counsel's ineffectiveness on the trial and appellate level, the Appellant would have been awarded a new trial.

App. 620–21 (initial brief); App. 639 (on remand). According to our dissenting colleague, these two passing references to appellate counsel suffice for Slaughter to have asserted his claim "in terms so particular as to call to mind a specific right protected by the Constitution," or to have alleged "a pattern of facts that is well within the mainstream of constitutional litigation." *Nara*, 488 F.3d at 198; *see* Diss. Op. 4–5. We disagree.

For starters, the single reference to appellate counsel in the point heading cannot constitute fair presentation because the claim articulated there is cognizable only against trial counsel. It would have been a magical feat indeed had appellate counsel "object[ed]" or "request[ed] that the jury's partial verdict be recorded before the trial court terminated deliberations and seated the already dismissed alternate juror to begin new deliberations." App. 618, 636. The logical impossibility of appellate counsel objecting at trial explains why Slaughter's argument focused entirely on trial counsel. He began by stating: "The

9

Appellant claims that trial counsel was ineffective for failing to object to the replacement of an already dismissed alternate juror after the juror had started deliberations." App. 618. Then, after describing the events from trial and the relevant legal rules, Slaughter explained: "In the instant matter, [trial] counsel was ineffective for failing to properly object to and preserve this issue [of impaneling the alternate after the deliberations had started] for appeal." App. 619–20. After three pages devoted entirely to trial counsel's ineffectiveness, Slaughter then claimed he would have been entitled to a new trial had it not been "for counsel's ineffectiveness on the trial and appellate level." Because that reference to the "appellate level" was a *non sequitur*, it's no surprise that Slaughter provided no factual or legal basis for a claim of ineffectiveness at the "appellate level." App. 621.

For these reasons, Slaughter neither asserted an ineffective assistance of appellate counsel claim "in terms so particular as to call to mind a specific right protected by the Constitution," nor alleged "a pattern of facts that is well within the mainstream of constitutional litigation." *Nara*, 488 F.3d at 198; *see* Diss. Op. 4–5. Instead, he articulated an ineffective assistance of trial counsel claim bookended by stray (and inapposite) references to appellate counsel. Bald and irrelevant references such as these two cannot pass for fair presentation.

In light of the foregoing, Slaughter's counsel predictably admitted that the claim of ineffective appellate counsel was not fairly presented in state court. At the outset of oral argument, the Court asked whether the ineffective assistance of trial counsel claim was the only "live claim" on appeal. Counsel readily agreed. Oral Argument 1:20–38.

And when pressed about this concession that Slaughter did not fairly present the ineffective assistance of appellate counsel claim, counsel explained: "The concern that we had was that the argument really focused on trial counsel's performance, although appellate counsel was mentioned in the heading." *See* Oral Argument at 13:14–30. Counsel was right to have this concern. Although Slaughter mentioned appellate counsel, his claims were aimed at trial counsel alone.[2]

Slaughter's failure to preserve his claim of ineffective appellate counsel is not limited to the state court litigation. He also failed to pursue that claim in his federal habeas petition and the accompanying memorandum of law he filed pro se in the District Court. Repeating what his counsel filed in the Superior Court, Slaughter mentioned appellate counsel only in passing, claiming he was denied effective assistance of "both trial and appellate counsel where there was a failure to object to and/or request that the jury's partial verdict be recorded before the trial court terminated deliberations and seated the already dismissed alternate juror to begin new deliberations." App. 43. Despite this one-word reference to "appellate" counsel, Slaughter again presented no legal or factual basis for ineffective assistance of appellate counsel in his memorandum of law.

---

[2] The dissent claims we are not bound by counsel's concession. Diss. Op. 8–9. But the cases it cites in support of that position stand only for the proposition that courts are not bound by concessions on points of law. For example, the dissent relies on our opinion in *United States v. Engler*, 806 F.2d 425, 433 (3d Cir. 1986). In *Engler*, we noted merely that we were not bound by the government's concession "that the absence of a scienter requirement in the felony provision of the Migratory Bird Treaty Act violates the due process clause." 806 F.2d at 433. The concession by Slaughter's counsel was markedly different because he effectively withdrew the ineffective assistance of appellate counsel claim. And we know of no authority allowing us to, sua sponte, resuscitate withdrawn claims.

Finally, Slaughter failed to raise this claim in his pro se motion for a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2) and (3) (certificate may issue only on a substantial showing of denial of constitutional right and certificate shall indicate issue satisfying that requirement). He argued that trial counsel was ineffective for failing to properly object to the trial court's *Saunders* violations, never once mentioning appellate counsel in relation to that issue. Docket No. 18-2062, June 15, 2018 Motion for Certificate of Appealability, 10–13.

Although we construe pro se habeas petitions liberally, *see, e.g.*, *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010), we cannot relieve a petitioner of the requirement to "state the facts supporting each ground" for relief. Habeas Corpus Rule 2(c); *see Mayle v. Felix*, 545 U.S. 644, 649 (2005). And we will not create claims that a habeas petitioner did not pursue, particularly when he also failed to raise them in his motion for a certificate of appealability.

\*       \*       \*

For the reasons stated, we will affirm the District Court's order denying Slaughter's petition for writ of habeas corpus.

KRAUSE, *Circuit Judge*, dissenting.

Because I would hold that Appellant Rondell Slaughter fairly presented a meritorious ineffective-assistance-of-appellate counsel (IAAC) claim to the Pennsylvania courts, I respectfully dissent.

## I.

At the time of Slaughter's trial in 2002, Pennsylvania Rule of Criminal Procedure 1108(a) provided that "[a]n alternate juror who does not replace a principal juror shall be discharged before the jury retires to consider its verdict." Pa. R. Crim. P. 1108(a) (1980). Thus, an alternate juror could not be substituted for a principal juror after deliberations began. The Pennsylvania Superior Court—whose decisions we take as authoritative on federal habeas review, *Everett v. Beard*, 290 F.3d 500, 511 (3d Cir. 2002)—explained in *Commonwealth v. Saunders*, 686 A.2d 25 (Pa. Super. Ct. 1996), that a violation of Rule 1108(a) was presumed prejudicial on direct appeal. *Id.* at 28. Only if a trial court took four specific steps, involving the questioning and instruction of both the alternate and primary jurors, would that presumption of prejudice be rebutted. *Id.* at 29.

Rule 1108(a) was plainly violated at Slaughter's trial. After the first day of deliberations, one of the jurors became sick and appeared unlikely to return. Slaughter's counsel moved for a mistrial, but the judge denied the motion and instead substituted an alternate juror. Slaughter's counsel objected to that ruling and his objection was noted for the record. The judge then re-instructed the jurors but did not question them to the thorough extent described in *Saunders* as necessary to rebut the presumption of prejudice

1

resulting from a violation of Rule 1108(a). Slaughter's counsel did not object to the judge's failure to colloquy the jurors.

The case was by all appearances a close one. The evidence against Slaughter consisted of testimony by a single eyewitness who was the admitted leader of a prostitution and drug-dealing ring and had refused for several months to cooperate; physical evidence was found in the possession of Slaughter's co-defendant but not, apparently, in Slaughter's. The jury struggled with this evidence: Before the juror substitution, the jury deadlocked; after the juror substitution, it did so again.

Ultimately, the reconstituted jury convicted Slaughter on all charges, so Slaughter brought a direct appeal of his conviction. His appellate counsel did not raise a claim under Rule 1108(a) and *Saunders*, opting instead to challenge the sufficiency of the evidence, the length of the sentence, and the judge's charge to the once-deadlocked jury to continue deliberating. These claims were rejected on direct review.

Slaughter proceeded to challenge his conviction under the Post-Conviction Reform Act (PCRA). After his petition was denied in the Court of Common Pleas, the Superior Court granted relief on Slaughter's ineffective-assistance-of-trial-counsel (IATC) claim. Because it granted relief, that court expressly declined to reach Slaughter's other claims, including his IAAC claim. After the Supreme Court vacated and remanded for reconsideration of the IATC claim under the proper prejudice standard, the Superior Court reconsidered, and denied, Slaughter's trial-counsel ineffectiveness claim. It once again failed, this time without explanation, to reach any of Slaughter's other claims.

2

Slaughter then filed a timely *pro se* federal habeas petition, which was denied. We granted a certificate of appealability (COA) on three questions: "(1) whether trial counsel was ineffective for failing to object to the trial court's jury instruction in seating an alternate juror after the jury had started deliberations, *see Commonwealth v. Saunders*, 686 A.2d 25 (Pa. Super. Ct. 1996); and (2) whether appellate counsel was ineffective for failing to challenge the trial court's (a) decision to seat an alternate juror after deliberations had begun, *see Saunders*, 686 A.2d at 27, and (b) jury instruction in seating the alternate juror, *see id.* at 29." JA 31. And at our instruction, appointed counsel diligently briefed those issues.

## II.

The crux of my disagreement with the Majority concerns whether Slaughter's IAAC claim was fairly presented to the state courts. The Majority concludes that Slaughter did not fairly present this claim and therefore accepts Slaughter's counsel's perplexing concession at oral argument to that end. I respectfully disagree. Under a straightforward application of our fair-presentation precedent, Slaughter's claim was properly before the state courts. The Commonwealth's contrary conclusion rests on inapposite case law dealing with forfeiture on direct appeal. And we are not compelled to accept Slaughter's legally incorrect last-minute concession. For those reasons, I would hold that Slaughter's IAAC claim was fairly presented.[1]

---

[1] The Majority examines Slaughter's District Court briefing and his application to a motions panel of our Court for a Certificate of Appealability and concludes that, because Slaughter allegedly failed to raise the IAAC claim in those submissions, we cannot now "create claims that a habeas petitioner did not pursue." Maj. Op. at 12. For

3

A.

The fair-presentation requirement "merely requires a petitioner to give the state courts the opportunity to pass on the merits of a claim." *Velazquez v. Superintendent Fayette SCI*, 937 F.3d 151, 160 (3d Cir. 2019) (internal quotation marks and citation omitted). A petitioner fulfills this obligation "if he presented the same factual and legal basis for the claim to the state courts" as he presents to the federal courts. *Nara v. Frank*, 488 F.3d 187, 198 (3d Cir. 2007) (internal quotation marks and citation omitted).

In his briefing to the Pennsylvania Superior Court,[2] Slaughter presented the factual and legal basis for a conclusion that his appellate counsel rendered constitutionally ineffective assistance. His point heading expressly referenced his IAAC claim:

> The Appellant was denied due process and effective assistance of counsel by both trial *and appellate counsel* where there was a failure to object to and/or request that the jury's partial verdict be recorded before the trial court terminated deliberations and seated the already dismissed alternate juror to begin new deliberations.

the reasons I explain below, I disagree. But at this point, it would not be dispositive, even if Slaughter had not clearly raised the IAAC claim at earlier stages of the federal habeas litigation. This issue is before us now because our own motions panel granted a COA on the IAAC claim—and if there are any prior instances in which a merits panel of this Court reexamined the providence of a prior panel's decision to grant a COA, they are exceedingly rare. Instituting such a practice would not only unnecessarily add to the burden of this Court's merits panels but also undermine the reliance interests of litigants we instruct to brief such issues.

[2] The Majority asserts that Slaughter's earlier briefing in the Court of Common Pleas demonstrated that he "understood this [appellate-counsel] claim and how to present it." Maj. Op. at 8. Even assuming that is true it is immaterial, for the fair-presentation inquiry concerns what the reviewing court—here, the Superior Court—would have reasonably understood from Slaughter's briefing, not what Slaughter did or did not understand about his own claim.

JA 618 (emphasis added) (initial brief); JA 636 (emphasis added) (on remand).

And in discussing this claim, he clearly explained the reason that appellate counsel erred—i.e., failing to raise a claim of error of improper juror substitution under *Saunders*' elaboration of Rule 1108(a)—and the conclusion that this error constituted ineffective assistance on the part of his appellate counsel:

> [T]he trial court's post-submission substitution of the alternate . . . violated the rule of law in *Saunders*. Counsel should have properly preserved this issue since it violated the Appellant's right to a fair trial. If it was not for counsel's ineffectiveness on the trial *and appellate level*, the Appellant would have been awarded a new trial.

JA 620–21 (emphasis added) (initial brief); JA 639 (emphasis added) (on remand).

Thus, Slaughter did all he needed to do: He notified the state courts of the legal nature of his claim—ineffective assistance of appellate counsel—and set forth the factual basis upon which that claim rested. The Majority faults Slaughter for devoting his explanation of the error to a description of what occurred at trial, which the Majority perceives as directed "entirely to trial counsel's ineffectiveness." Maj. Op. at 10. But what else would Slaughter need to say? The basis for trial counsel's alleged ineffectiveness—the violation of Rule 1108(a)—was the very same basis for appellate counsel's alleged ineffectiveness. So Slaughter's description of the trial court's error and trial counsel's failure to request a curative instruction after having properly objected to the substitution, combined with the absence of this issue in Slaughter's briefing on direct appeal, relay all that is necessary to explain what Slaughter meant when he referenced "counsel's ineffectiveness on the trial and appellate level." JA 620–21.

5

And in any event, having been confronted with the fact that the trial court in this case effected a plain violation of state law, the persistence of this error through the direct-appeal process in conjunction with Slaughter's repeated references to appellate counsel's ineffectiveness was enough to call to mind for any reasonable jurist "a pattern of facts that is well within the mainstream of constitutional litigation," which suffices to fairly present a claim under our case law. *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 229 (3d Cir. 2017). Indeed, Slaughter did more than that here; his "filings provided ample basis to pass on the merits of this claim," and so his claim was fairly presented. *Velazquez*, 937 F.3d at 160.

B.

In urging a contrary result, the Commonwealth contends that Slaughter's clear mentions of appellate-counsel ineffectiveness in his state-court briefing "can hardly be considered *fair* presentation when the argument section contains little or no explanation as to *how*, on the petitioner's theory, any such violation occurred."[3] Appellee's Br. 51. This line of argument misapprehends the applicable standard.

As explained above, Slaughter presented the "factual and legal basis" for his IAAC claim to the state courts and therefore fairly presented it under our precedent. *Nara*, 488 F.3d at 198. The Commonwealth does not cite any relevant habeas case law to contravene this conclusion and support its assertion that Slaughter's IAAC claim was not

---

[3] The Commonwealth's procedural-default argument is advanced as the Commonwealth's alternative theory as to why the Superior Court failed to address the IAAC claim. Its primary theory is that the Superior Court considered the IAAC claim so frivolous it was not worth addressing. *See id.*

6

sufficiently developed. Rather, it invokes the principle set forth in two direct appeals, *In re Wettach*, 811 F.3d 99, 115 (3d Cir. 2016), and *United States v. Rawlins*, 606 F.3d 73, 82 n.11 (3d Cir. 2010), that we will not review a claim in our Court where a party "fail[s] to develop [the] argument in [its] opening brief." *Wettach*, 811 F.3d at 115; *accord Rawlins*, 606 F.3d at 82 n.11 (stating that the party "waived the issue by failing to develop it in the argument section of his brief").

Those cases are inapposite. It is true that we hold a claim forfeited if it is not developed in a party's opening brief to our Court. Here, however, Slaughter's opening brief exhaustively set forth his IAAC claim in eight pages of lucid argument. That is as far as the standard recited in *Wettach*—that an argument in our Court must be stated and developed, or else it is forfeited—reaches. Our standard for fair presentation is far less demanding: It does not even require that the petitioner expressly state his claim in his state-court briefing. *See Wilkerson*, 871 F.3d at 228–30. The gravamen of the fair-presentation inquiry is simply whether the state courts had the opportunity to reach the claim, *see Velazquez*, 937 F.3d at 160—not the quantum of "support for [the] position" or the presence of "substantive argument" in the petitioner's state-court briefing, *see Wettach*, 811 F.3d at 115. In any case, even if this more stringent standard were applicable—which it plainly is not—Slaughter not only expressly stated to the state courts that he was making an IAAC claim but also set forth ample support for that claim in his state-court briefing. So the Commonwealth's argument fails.

7

C.

The Majority also bases its rejection of the IAAC claim on Slaughter's counsel's startling concession at oral argument that the IAAC claim was not fairly presented. Under the circumstances, I would not accept that concession.

I begin by noting just how improvident the concession was. We granted a COA for the express purpose of addressing Slaughter's IAAC claim. In Slaughter's opening brief in this Court, the IAAC claim was the primary issue: It was discussed first and in the most depth, as Slaughter's counsel persuasively contended that the IAAC claim was properly before us and was correct on its merits. In opposing this claim, the Commonwealth's brief hardly touched on the fair-presentation requirement: It contended primarily that the state courts neglected to address the IAAC claim because it was patently meritless and argued only in the alternative that they neglected to address the claim because it was not fairly presented. That argument ran two double-spaced pages in a nearly sixty-page brief and, as explained above, was legally incorrect. Nonetheless, Slaughter's arguing counsel—a different attorney than the one who prepared his opening brief—began his oral argument by conceding the IAAC claim on fair-presentation grounds.

We are not bound by that concession. As the Second Circuit recently explained, "It is well-established that a court cannot properly determine a question of law on the basis of a party's concession . . . . Indeed, a court retains the independent power to identify and apply the proper construction of governing law." *United States v. Castillo*, 896 F.3d 141, 149 (2nd Cir. 2018) (internal quotation marks and citations omitted) (citing

8

*Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 163 n.* (2011) (Scalia and

Thomas, JJ., concurring in the judgment) ("We are not bound by a litigant's concession

on an issue of law.")); *accord United States v. Perez-Silvan*, 861 F.3d 935, 938 n.2 (9th

Cir. 2017); *United States v. Hope*, 545 F.3d 293, 295 (5th Cir. 2008); *United States v.*

*Borrero-Acevedo*, 533 F.3d 11, 15 n.3 (1st Cir. 2008). We have recognized the same

principle. *See United States v. Engler*, 806 F.2d 425, 433 (3d Cir. 1986).

In this case, our duty to exercise our "independent power to identify and apply"

the law weighs most heavily. *Castillo*, 896 F.3d at 149. We confront what is

unmistakably a question of law. Before counsel's concession, we granted Slaughter a

COA to consider the IAAC claim and that claim was fully briefed to us. And while

counsel stated at oral argument that he decided to "focus on the IATC claim, not the

IAAC claim," Oral Argument at 1:40, because of "concerns about fair presentation with

the [IAAC] claim," *id.* at 3:25, he also stated that he would "be grateful if the court felt it

could reach [the IAAC claim] on this record," *id.* at 12:50. Counsel thus conceded that,

in his view, the IAAC claim had not been fairly presented—but also expressly invited us

to analyze it if we disagreed with his legal analysis. We can do so because, as even the

Majority agrees, "courts are not bound by concessions on points of law." Maj. Op. at 11

n.2. And under the circumstances of this case, that is our duty.[4] *See Castillo*, 896 F.3d at

---

[4] Because whether a claim was fairly presented is a legal question and because the Majority agrees that we are not bound by concessions on points of law, Maj. Op. at 11 n.2, it should also agree that the fair presentation issue is one we must independently address. Instead, the Majority circumvents this logic by asserting that counsel's concession "effectively" withdrew the IAAC claim in its entirety. *Id.* But the effect is of

9

I therefore would accept counsel's invitation to reject his concession, would consider the fair-presentation issue and, as I have explained, would resolve it in Slaughter's favor.

### III.

Because I conclude that the IAAC claim was fairly presented, I would consider its merits, and because the state courts failed entirely to address that claim, we do not apply AEDPA deference but instead review it de novo. *See Simmons v. Beard*, 590 F.3d 223, 231 (3d Cir. 2009). A petitioner is entitled to relief on an ineffective-assistance-of-appellate-counsel claim where appellate counsel performs unreasonably and the petitioner is prejudiced as a result. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000). Both prongs of this test were met here.

Slaughter's appellate counsel performed unreasonably. Appellate counsel's performance is objectively unreasonable "when ignored issues are clearly stronger than those presented." *Id.* (internal quotation marks and citation omitted). Here, Slaughter's counsel presented three claims: excessive sentence, coercion of the jury by charging them to continue deliberating after initial deadlock, and sufficiency of the evidence. *See* JA 570–72. These claims were easily rejected by the Superior Court. *See id.*

The claim of improper juror substitution was "clearly stronger." *Robbins*, 528 U.S. at 288. Under Rule 1108(a), Slaughter's trial judge was forbidden from substituting the alternate juror, and under *Saunders*, that error was presumptively prejudicial unless

---

our own making: The record of oral argument makes clear that is not what happened here.

10

the judge extensively questioned the jurors, which he failed to do. *See* 686 A.2d at 28–29. Thus, the *Saunders* claim would have resulted in a new trial. *Id.* at 29.

The Commonwealth's only response to this straightforward reasoning is that the juror-substitution claim was not preserved at trial and that appellate counsel therefore did not err in declining to raise it. The Commonwealth contends that because Slaughter's trial counsel did not object to the trial court's instructions to the reconstituted jury, his appellate counsel could not have argued on appeal that the juror substitution was improper. But that contention misapprehends squarely applicable Pennsylvania law: "[W]hen an objection is overruled, failing to request curative instructions or a mistrial does not result in waiver." *Commonwealth v. McGeth*, 622 A.2d 940, 943 (Pa. Super. Ct. 1993). Thus, any objection (or lack thereof) to the jury instructions was irrelevant to preservation of the error in seating the alternate juror—which Slaughter's trial counsel unequivocally objected to and therefore preserved. For that reason, Slaughter's appellate counsel performed deficiently in failing to raise the juror-substitution issue.

That error prejudiced Slaughter. Prejudice results from ineffective appellate assistance where there is "a reasonable probability that, but for his counsel's unreasonable failure to [identify the issue], he would have prevailed on his appeal." *Robbins*, 528 U.S. at 285. Here, had Slaughter's counsel raised the *Saunders* claim on appeal, Slaughter unquestionably "would have prevailed" because the trial court violated Rule 1108(a) and failed to colloquy the jurors as required to rebut the resulting presumption of prejudice. *See Saunders*, 686 A.2d at 29. Slaughter's appellate counsel's failure to raise such a claim therefore cost him a new trial.

11

## IV.

Because Slaughter fairly presented his IAAC claim and it succeeds on the merits, I would reverse the judgment of the District Court and remand for the petition to be granted. I express no opinion on whether Slaughter may be able to seek belated relief through the narrow but extant avenues for bringing successive habeas claims under state or federal law. *See Commonwealth v. Parish*, 224 A.3d 682, 702 (Pa. 2020) (allowing filing of second PCRA petition where first counsel's "performance [wa]s so deficient that it ha[d] entirely denied the post-conviction petitioner the right to appeal"); 28 U.S.C. § 2244(b)(2) (allowing filing of second federal habeas petition in certain cases involving newly discovered evidence). If they are not, then this case will represent a deeply unfortunate—and, I hope, rare—instance of attorney errors costing a defendant a clearly meritorious claim. Given these reservations, I respectfully dissent.